removed two of the flagstones of the walk, and dug a trench in which to lay its pipe. One of the flagstones which had been removed was laid on top of another, and a space about five feet in width was left between the two openings, over which a traveler could walk in perfect safety. The plaintiff, an old lady, in broad daylight, with nothing to obscure her vision, and with the situation confronting her made perfectly obvious, tripped over the displaced flagstone, and fell, receiving the injuries of which she complained. It was held that in these circumstances she could not recover. The case came directly within the principle laid down in Weston v. City of Troy, supra, which, as we have attempted to show, has no application to the somewhat peculiar circumstances of the present case.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

(13 App. Div. 444.)

### HICKS v. BRITISH-AMERICAN ASSUR. CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. INSURANCE—CONTRACT BY AGENT—PRIVATE INSTRUCTIONS.
   Private instructions by an insurance company to its agent, not to insure plaintiff, are not binding on plaintiff, who procured insurance from the agent in the usual course of business, not knowing of such instructions.

2. SAME—PROOF OF CONTRACT.
   Plaintiff testified that, when he applied to defendant for insurance, defendant gave him rates, and said, "You are insured from noon on the 30th day of December, 1893, to noon of December 30, 1894." Defendant denied that he made the insurance, but said he would insure after seeing how other policies on the same property were written. On the second day thereafter, defendant inspected the property. Plaintiff and another witness testified that defendant then said that plaintiff was insured for $2,500, and that he would write up the policy. Defendant denied that he had said plaintiff was insured, but stated that he said he would insure plaintiff after seeing other policies on the building. That he would write up the policy. The fire occurred before the policies were prepared. *Held*, that there was sufficient evidence to justify a finding that a contract of insurance was made.

3. SAME—DENIAL OF CONTRACT—PROOF OF LOSS.
   It is not requisite to a recovery in an action on a contract to insure that plaintiff should serve proofs of loss, where defendant denies the contract, though the policy which was to have been issued was a New York standard policy, which provides that written proofs of loss should be furnished by the insured within 60 days after the fire.

4. EVIDENCE—MEMORANDUM—ADMISSIBILITY.
   A memorandum of a conversation is not admissible where the person making it did not testify that he was unable to recollect the substance of the conversation without referring to the memorandum, or that he was unable to remember the details of the conversation after refreshing his memory with the memorandum.

5. NEW TRIAL—FORMER TESTIMONY—SLIGHT VARIATION.
   A new trial will not be granted on the affidavit of a witness who was examined and cross-examined at the trial, and who testified that defendant said plaintiff was insured, where his affidavit only varies his testimony by stating that he "thought" defendant so stated.

6. SAME—CORROBORATIVE TESTIMONY.
   The mere fact that another witness will testify on a retrial to the same fact that was testified to by another witness is not sufficient to justify a new trial.

Appeal from circuit court, Monroe county.

Action by Georgiana Hicks against the British-American Assurance Company on a contract. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. H. Sawyer, for appellant.

John A. Barhite, for respondent.

FOLLETT, J. This action was begun May 9, 1894, to recover on a contract of insurance, or to recover on a contract to insure. It is difficult to determine from the complaint which cause of action its draftsman had in mind and intended to set forth. The complaint, in form, contains but a single count or cause of action, but contains allegations applicable to both causes of action; and, the defendant not having moved that the causes of action be separately stated, we must treat the complaint as sufficiently setting forth two causes of action,—one on a contract of insurance, and one on a contract to insure. A contract of insurance is usually in writing, and is termed a "policy," but an oral contract of insurance or an oral contract to insure is binding on the insurer, provided it is made by one having authority. One contract is executed, and the other executory, and the distinction between them is pointed out by the following authorities: Union Mut. Ins. Co. v. Commercial Mut. Marine Ins. Co., 2 Curt. 524, Fed. Cas. No. 14,372, affirmed 19 How. 318; Insurance Co. v. Colt, 20 Wall. 560; Putnam v. Insurance Co., 123 Mass. 324; Rhodes v. Insurance Co., 5 Lans. 71; 1 May, Ins. (3d Ed.) § 43. The contract upon which the action was brought was entered into between George C. Hicks, the insured, and Melmoth Hobart, acting as the agent for the insurer. The answer contains the following allegation in respect to the authority of the agent:

"The defendant admits that the said Hobart, mentioned in the complaint as the agent of the defendant, was authorized to deliver policies of insurance, and make agreements for policies of insurance, subject, however, to the conditions of said policies, and to the rules and regulations of this defendant."

There is no provision in the policy providing that the agent shall not have power to bind the defendant by such a contract as the jury found was made, and no rules or regulations of the defendant depriving the agent of such powers were proved, or offered to be proved. At folio 213 the defendant offered to show that it had instructed Mr. Hobart not to insure the property of George C. Hicks, which was rejected, and an exception taken. The private instructions of the defendant to its agent, limiting his general power, were not binding upon George C. Hicks, who was dealing within the scope of the general power of the agent, unless such private instructions were brought to his knowledge. Walsh v. Insurance Co., 73 N. Y. 5; Ruggles v. Insurance Co., 114 N. Y. 415, 21 N. E. 1000; May, Ins. (3d Ed.) §§ 126, 509; Bid. Ins. § 119. It is not asserted that George C. Hicks had any knowledge or notice of the

private instructions which the defendant sought to show that it had given its agent. Under this state of the pleadings and the evidence, it must be held that the jury was authorized to find that Hobart had power to bind the defendant by the contract which the jury found was made.

The property alleged to have been insured was a malt house in the village of Penn Yan, on which there were policies of insurance issued by another insurance agent in that village. The malt house was destroyed by fire between the hours of 1 and 5 o'clock on the morning of Tuesday, January 2, 1894. At the time of the fire, George C. Hicks had not paid defendant's agent for a policy, and one had not been delivered to Hicks, nor had one been written by defendant's agent. A recovery was sought and had on the theory that the defendant's agent and George C. Hicks had, before the fire, entered into a valid oral contract of insurance, to be evidenced by a policy to be immediately written by the agent and delivered to Hicks, who was then to pay the premium. The appellant insists that the evidence was insufficient to authorize the jury to find that a contract was actually entered into between George C. Hicks and Melmoth Hobart, on the part of the defendant, by which he agreed to insure the malt house. Hicks and Hobart testified on the trial, and both agreed that in the evening of Saturday, December 30, 1893, the former called on the latter, and asked for $5,000 additional insurance on the malt house. Hobart, defendant's agent, testified that "I told him [Hicks] I thought I could place $5,000 for him," but that no contract was made, because he did not know how the existing policies were written. Hicks testified that Hobart expressed a desire to see the existing policies, and write those he was to issue in conformity with the existing ones, and that he (Hicks) replied that the policies were to be found at the Yates County National Bank, or at the office of Mr. Sisson, over the bank. He also testified that it was agreed that the premium would be $1\frac{1}{4}$ per cent., payable on the delivery of the policies, and that Hobart said, "You are insured from noon on the 30th day of December, 1893, to noon, December 30, 1894." That he asked him "what companies he would place him in, and he [Hobart] said he would place him in the British-American and Westchester,—for $2,500 in each." Hobart denied that he made this statement. The next day was Sunday, on which Hobart and Hicks had no interview. Both testified that on Monday, January 1, 1894, Hobart inspected the malt house, and agreed to insure it in the sum of $5,000. Hicks testified that at the close of the interview he said, "Do I understand that I am insured in the British-American and Westchester Fire Insurance Companies?" and he (Hobart) said, "You do," and that Hobart said, "I will go right over, and get those policies up to-day." Hobart denied that he made this statement, and testified that it was agreed that Hicks was to get for him one of the existing policies, and then he would write a policy in some company, no company being then specified. Mr. Coleman, the malster employed by Mr. Hicks, testified that he was present during the conversation at the brewery, and heard Hobart say that Hicks was insured in

the British-American Fire Insurance Company for $2,500, and that Hobart agreed to go to the bank where the existing policies were, and write two policies which should conform to the existing policies. There was other testimony, not important to be quoted, which tended to corroborate the testimony of Hobart and the testimony of Hicks; but, without stating it in detail, I am of the opinion that the evidence presented a question of fact for the jury to determine,—whether Hobart agreed that Hicks was insured by the defendant for the sum of $2,500 for one year from December 30, 1893,—and that there is no valid exception to that part of the charge which relates to this issue.

It was shown that all the policies issued by the defendant on property in this state since January 1, 1888, have been the New York standard policies, which policies contain the usual provision that written proofs of loss shall be furnished by the insured within 60 days after the fire, with which the insured did not comply. Hicks and Hobart testified that on the day of the fire—January 2, 1894—the former called on the latter, and talked about the fire. Hicks testified that he asked for his policy, which Hobart admits; and Hicks also testified that he asked for blank proofs of loss, which Hobart neither denies nor admits. Hobart testified that he stated to Hicks that he had issued no policy, because he had not been furnished with one of the existing policies as agreed, and that the conversation closed by his saying, "I will write to my companies, and I will state the facts to them and get their advice"; and he further testified, "I think I did write to all of them, except the Agricultural, stating the facts in the case." The next day (January 3d) Hicks, accompanied by William T. Morris, his attorney, called on Hobart, and tendered the amount of the premium (which Hobart refused to accept), and demanded of Hobart his policies and blank proofs of loss, both of which Hobart refused to furnish. On this occasion he said he had written his companies the facts in the case. The witnesses agreed as to what took place at the interview of January 3d. The defendant, in its answer, denied that it agreed, through its agent, Hobart, to insure the malt house, or to execute and deliver a policy thereon, in the usual form, for the sum of $2,500, for one year from December 30, 1893. It denied that there was any contract of insurance, or any contract to insure the malt house. It was conceded that formal proofs of loss were never served, and the defendant moved for a nonsuit because of such failure. The motion was denied, and an exception taken. From first to last, the defendant took the position that it had not contracted to insure the property. Under such circumstances, the insured was not required to serve proofs of loss, as a condition of recovery. Tayloe v. Insurance Co., 9 How. 390; Insurance Co. v. Pendleton, 112 U. S. 696, 5 Sup. Ct. 314; Grattan v. Insurance Co., 80 N. Y. 281; Shaw v. Insurance Co., 69 N. Y. 286; May, Ins. (3d Ed.) § 469; Bid. Ins. § 1139.

Hobart made a memorandum of part of the conversation had December 30, 1893, with Hicks, which the defendant offered in evidence, but it was rejected, and an exception taken. Hobart did

not testify that he was unable to recollect the substance of that conversation without referring to the memorandum, nor that he was unable to remember the details of the conversation after refreshing his memory by looking at the memorandum.     Under this state of the evidence, the memorandum was not admissible.     Bank v. Madden, 114 N. Y. 280, 21 N. E. 408.

It was insisted on the trial by the defendant that the insured made false representations to Hobart in respect to the value of the malt house, and in respect to the amount of incumbrances thereon. Whether such representations were made was submitted to the jury upon conflicting evidence, and found for the plaintiff.

The exceptions taken to the charge, other than those considered, do not require special consideration; for, reading the charge as a whole, and as modified, the questions of fact were well submitted, and the record contains no valid exceptions to the instructions given and refused.

The defendant has moved for a new trial on the ground of newly-discovered evidence, which was denied, and an appeal has been taken from the order.     Thomas H. Coleman, who was present at the interview between Hicks and Hobart at the brewery, testified on the trial that Hobart said that the "British-American would take the risk of $2,500.     Hobart said that."     He now makes an affidavit that he did not intend to testify that Hobart said "he would place $2,500 of said insurance with the British-American Insurance Company, but that he thought that he would place $2,500 of it with the said company."     This witness was fully examined and cross-examined as to what occurred at this interview, and the slight variation which he proposes to make in his testimony forms no basis for granting a new trial on the ground of newly-discovered evidence. Charles H. Bush makes an affidavit in which he states that he is well acquainted with George C. Hicks, and that on the 2d of January, 1894, he had a conversation with him, in which he said "that he supposed he had $5,000 insurance with Hobart's agency; that he had applied for $5,000 insurance with Hobart, and Hobart had accepted it; but that, as Hobart did not name any companies in which he would place the risk, he supposed all the companies represented by Hobart would have to stand the loss pro rata."     This is the only affidavit made by any person who proposes to swear to new facts upon a retrial that is worthy of consideration.     Charles H. Sisson, who was sworn for the defendant on the trial, testified that he had a conversation with Hicks on the day of the fire, and that he told him that Hobart did not mention the companies in which he would place the insurance.     The mere fact that another witness will testify on a retrial to the same fact that was testified to by Sisson is not sufficient to justify a new trial.     The affidavit of Delos C. Hubbard is utterly unworthy of consideration.     On the 25th and 27th of August, 1894, he made affidavits in which he states that he burned the malt house for a consideration, and it is not probable that a jury would regard his evidence as worthy of credit.     A case for a new trial on the ground of newly-discovered evidence is not made out.

The order denying the motion for a new trial on the ground of newly-discovered evidence should be affirmed, with $10 costs and disbursements, and the judgment and order denying the motion for a new trial, made on the minutes, should be affirmed, with costs. All concur.