of the corporation, and gave it the power to run its conductors through "each such city, village and town," referring to the cities, villages, and towns named in its charter where the business was to be carried on. When the village of Ossining gave its consent, it merely made the franchise operative in that municipality, and it became entitled to exercise within that village all of the powers given by the statute during the whole term of its corporate existence. People ex rel. Woodhaven Gas Co. v. Deehan, 153 N. Y. 528, 47 N. E. 787. The statute clearly contemplated that the gas need not be manufactured in each community, for it is expressly provided that the corporation shall have the power to "acquire by purchase or otherwise natural gas and to sell and furnish such quantities of gas" as may be necessary, thus clearly indicating that the conductors were for the purpose of distributing to the various villages and towns which might be included in the certificate of incorporation.

In this view of the matter, it is clearly immaterial that the court excluded evidence of admissions on the part of the plaintiff's superintendent that the work being done was for the purpose of supplying the other towns and villages mentioned in its charter, and the evidence of such superintendent, called by the defendants, assuming that it established the fact, would have no bearing upon the proper disposition of this appeal.

The judgment appealed from should be affirmed, with costs. All concur.

---

SINGER et al. v. NATIONAL FIRE INS. CO. OF HARTFORD, CONN.

(Supreme Court, Appellate Division, Second Department. January 10, 1913.)

1. APPEAL AND ERROR (§ 171*)—REVIEW—THEORY ON WHICH PRESENTED BELOW.

A case must be determined in the appellate court upon the same theory on which it was presented below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1069, 1161–1165; Dec. Dig. § 171.*]

2. INSURANCE (§ 136*)—DELIVERY AND ACCEPTANCE OF POLICY—EFFECT.

A delivery of an insurance policy to an agent for the insured and his delivery to the insured constitutes a good delivery by the insurer, with an intent to become bound thereby.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–230; Dec. Dig. § 136.*]

3. INSURANCE (§ 559*)—WAIVER—NOTICE OF LOSS.

An insurer who repudiates a policy, and denies liability because there was no valid policy in force at the time of the loss, is in no position to show that the insured has lost his rights thereunder by failing to give immediate notice of loss, as required by the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1391, 1392; Dec. Dig. § 559.*]

4. EVIDENCE (§ 263*)—ADMISSIONS—EVIDENCE TO EXPLAIN—CONTRACT OF INSURANCE.

Where an insurer, defending an action on a policy, which had been delivered to the agent for the insured, on the ground that it was not in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

force at the time of the loss, in order to show that the insured had refused to accept the policy, introduced letters from the insured to such agent to the effect that they had returned the policy to him because they already had insurance on the property, the insurer was in no position to object to oral communications between the insured and the agent from which it appeared that the policy was returned under a mistaken belief that the agent had previously procured insurance thereon.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1022–1027; Dec. Dig. § 263.*]

5. EVIDENCE (§ 263*)—DOCUMENTARY EVIDENCE — BRINGING OUT WHOLE TRANSACTION.

Where a part of a communication is put in evidence, the party against whom it is used has a right to have the entire matter brought out.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1022–1050; Dec. Dig. § 263.*]

Appeal from Trial Term, Kings County.

Action by Samuel J. Singer and others against the National Fire Insurance Company of Hartford, Conn. From a judgment for plaintiffs, and from an order denying a new trial on the minutes, defendant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Lewis H. Freedman, of New York City (Albert Stickney, of New York City, on the brief), for appellant.

Charles G. F. Wahle, of New York City, for respondents.

WOODWARD, J. The plaintiffs, as copartners, bring this action to recover an alleged loss under a policy of fire insurance issued to them by the defendant, and the defendant urges that it is not liable under such policy, on the ground that it never became operative; the plaintiffs having refused to accept the same.

[1] This was the issue tried and submitted to the jury, and, while other matters are urged upon this appeal, we are of opinion that the case must be determined here upon the theory on which it was presented before the trial court. It was stipulated on the part of the defendant that Messrs. Lustig & Marx, insurance brokers, on behalf of the plaintiffs, applied on or about the 14th day of October, 1909, to the National Fire Insurance Company of Hartford, Conn., defendant herein, for a policy of fire insurance insuring S. J. Singer & Sons, plaintiffs herein, and covering certain property in premises No. 113 Market street, Newark, N. J., and that, in response to such application, the National Fire Insurance Company of Hartford, Conn., defendant herein, executed the policy in suit, and that said policy was countersigned by Messrs. Lowy & Berger, duly authorized agents of the defendant company at Newark, N. J., and delivered to Messrs. Lustig & Marx, and mailed by Lustig & Marx to the plaintiffs, on or about November 16, 1909; that a fire occurred in the premises of the plaintiffs at No. 113 Market street, Newark, N. J., on the 2d day of December, 1909, by which certain of said property mentioned in the complaint was damaged and destroyed to the extent of $4,652.20; and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the said fire did not happen from any of the causes excepted in the policy, and that the policy so made and delivered to Lustig & Marx had never been returned to the defendant.

[2] There does not appear to be any question that Lustig & Marx, insurance brokers, were the agents of the plaintiffs in this transaction, and that a delivery to these agents, and an admission that the policy was by them handed on to the plaintiffs would constitute a good delivery of the policy on the part of the defendant, with an intent to become bound by its terms and conditions, and involving an obligation on the part of the plaintiffs to pay the premiums on such policy, while the stipulations in reference to the happening of the fire, the amount of the loss, and that the fire was not due to any of the excepted causes would seem to constitute a waiver of a strict performance of the conditions of the policy, assuming that the rather equivocal pleading on the part of the defendant raised an issue.

[3] The object of a condition in a policy that there shall be an immediate notification of the fire is for the benefit of the insurer, that it may investigate the causes, and, where upon the trial it is stipulated that none of the causes exist which would vitiate the policy, it is difficult to conceive of the defendant being aggrieved by the failure to show that such notice was given, especially where it insists from the start that it is not liable because there was no valid policy in being at the time of the fire. If there was no policy, then the plaintiffs owed no duty to the defendant, and the defendant, having repudiated the policy, is not in a position to say that the plaintiffs have sacrificed their rights because of a failure to perform the conditions of a policy which the defendant says does not exist, and in the case now before us we are of the opinion that the pleadings do not squarely raise the issue now sought to be urged.

[4, 5] What, then, is the foundation of the claim on the part of the defendant that this policy, concededly made, executed, and delivered to the agents of the plaintiffs, was not in force at the time of the fire? The contention is that the plaintiffs refused to accept the policy in suit, and this contention is based upon two letters written by an employé of the plaintiffs and addressed to Messrs. Lustig & Marx, who, it will be remembered, were not the agents or representatives of the defendants, but were the brokers engaged by the plaintiffs to procure the insurance. The first letter (Defendant's Exhibit 1) bears date of November 17, 1909, is addressed to Messrs. Lustig & Marx, and is stipulated by the plaintiffs to have been received by that firm. This letter reads:

"We herewith return you bill and policies. We do not know who authorized you to issue same. Our insurance on our store at No. 113 Market street, was placed before the store was opened."

To this letter the firm of Lustig & Marx replied, acknowledging the receipt of the plaintiffs' letter of the 17th, and saying:

"We beg to say that the policies covering your stock in the Newark store, to the amount of $3,500.00, were issued at the request of your Mr. Meyer Singer, before the store was opened. Kindly advise us what to do in this matter."

To the above, the plaintiffs, through an employé, wrote, saying:

"Answering your letter of November 18th, beg to state that our Mr. Meyer Singer has no knowledge of having placed insurance with you to cover our branch store. There must be some mistake in the matter. Our insurance was placed, as we stated in a previous letter, before the store was opened. Otherwise we should have been glad to have given you the business."

The defendant knew nothing of this correspondence, and took no action looking toward the cancellation of the policy in question before the fire on the 2d day of December, 1909. The communications were entirely between the plaintiffs and their broker, and, except for the fact that the defendant in some unexplained manner got possession of these letters, there would be no possible foundation for the defense now urged. With these letters in evidence, the plaintiffs called witnesses who testified to communications passing between the plaintiffs and their brokers in reference to this policy, from which it was made to appear that Meyer Singer was the active manager of various stores owned by the plaintiffs, and that he had arranged for the policy in question some time in September, before the opening of the Newark store, but that the policy was not delivered until some time in November, and that he assumed in dealing with the matter, as shown in the correspondence, that the policy then offered was additional insurance, and it was this additional insurance which he supposed he was rejecting; that he subsequently communicated, through one of the employés of the firm, with the brokers, and it was then understood and agreed that, if the policy was the one which had been contracted for in September, the plaintiffs wanted it; and that it was in fact held in the custody of the brokers, who assured the plaintiffs, through the employé, that, when the premiums were due, the plaintiffs would be expected to pay the same. Objection is urged to this line of testimony, showing the conversation between the brokers and the employé of the plaintiffs, on the ground that the defendant was not present at such conversations, and that it is hearsay, but we are of the opinion that the defendant, having opened the door by the introduction of letters passing between the plaintiffs and a third party, in no wise related to the defendant, that it is not now in a position to object to testimony tending to explain this correspondence. It is a rule of general application that, where a part of a communication is placed in evidence, the party against whom it is used has a right to have the entire matter brought out, and that rule is applicable here, where only a part of the communication between the brokers and the plaintiffs is in writing.

The judgment and order appealed from should be affirmed, with costs. All concur.