ALTERMATT, APPELLANT, v. ROCKY MOUNTAIN FIRE INSURANCE CO., RESPONDENT.

(No. 6,475.)

(Submitted May 27, 1929. Decided July 6, 1929.)

[279 Pac. 243.]

*Mr. O. B. Klotz* and *Messrs. Graybill & Graybill,* for Appellant, submitted an original and a reply brief; *Mr. F. L. Graybill* argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover,* for Respondent, submitted a brief; *Mr. S. B. Chase, Jr.,* of Counsel, argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This action was brought by plaintiff to recover upon a policy of insurance alleged to have been issued by defendant on the twentieth day of April, 1923, covering a dwelling and contents situated near Chester, owned by plaintiff.

The complaint alleges the execution and delivery of the policy by defendant, a copy being attached to and made a part thereof; the payment of the premium thereon; the total destruction of the insured property on or about December 5, 1925; notice of loss and waiver of proof of loss by defendant; the refusal of defendant to pay the amount of the policy; and that plaintiff has performed all conditions precedent on his part to be performed before the commencement of the action. Defendant, by answer, denied all the material allegations of the complaint.

At the close of the testimony the court granted defendant's motion for a directed verdict; judgment was accordingly entered for defendant. Plaintiff's motion for a new trial was denied, and he appeals from the judgment.

The motion for directed verdict presented the question of the sufficiency of the proof to show that defendant issued the policy in suit. On this issue the record discloses that a short time prior to April 20, 1923, plaintiff's brother went to the First National Bank at Chester to renew a policy of insurance previously issued by defendant upon the property involved, and which was then about to expire. J. O. Berglin, president of the bank and defendant's agent, was absent, and the matter was discussed with F. A. Pike, cashier of the bank and Berg-

lin's "right-hand man in everything he was interested in," who stated that they were not taking any new business. About three weeks later plaintiff's brother again called at the bank. The policy was then prepared by Pike from the old policy, countersigned "J. O. Berglin, P." The signature was appended by Pike, in the absence of Berglin. The premium was paid to Pike and the policy delivered.

The testimony tends to show that the premium was deposited in the bank to the credit of Berglin, "Agent," the account in which he deposited all insurance premiums collected by him for the various fire insurance companies he represented. The daily report required to be made to defendant was prepared but never mailed. It was found among the effects of Berglin a short time before the trial.

Leo P. McMeel, secretary-treasurer of defendant, testified: "He [Berglin] was our local agent with authority to write policies, solicit policies, collect premiums, receipt for premiums, insert provisions as to loss payable clauses; he had authority to cancel policies or to insert mortgagee provisions. He was authorized to transfer policies, but he must refer it to the home office or send us notice he had transferred it, but he could make notations on the policy itself. Plaintiff's proposed Exhibit 'C' [being a copy of the policy in question] appears to be a fire insurance policy in the Rocky Mountain; it is on one of our forms and is number 23,833, which was one of the blank policies left with Mr. Berglin, our agent at Chester."

Mr. Pike testified: "Q. What relationship, if any, did you have with Mr. Berglin with reference to the issuance of policies in fire insurance companies, with particular reference to the policies in the Rocky Mountain Fire Insurance Company? A. I actually handled a great deal of the detail work in connection with issuing the policies, although all new policies were O.K.'d by him. The renewals I handled without referring the policies to him. A good many of the policies were issued by me or under my direction, and whenever Mr. Berglin was not conveniently available to sign the policies, I signed his

name, indicating the fact that I had signed for him by the initial 'P.' This will apply to the several companies that Mr. Berglin was agent for, including the Rocky Mountain Fire Insurance Company.'' This practice had prevailed for more than a year and a half; Berglin had authorized Pike to sign policies, as was done with the policy before us.

The Chester agency was terminated in the fall of 1923, and defendant attempted to check up the policy forms and blanks furnished to Berglin, but without success. McMeel, after stating the efforts made, testified: ''But we couldn't keep a man up there to do it in person.'' In the spring of 1924, and while defendant was endeavoring to locate the blank policies, a special agent of defendant had a conversation with Berglin in which the Altermatt policy was referred to. Berglin died in May, 1924.

The first question presented is whether Berglin, defendant's agent, had authority to delegate to Pike the right to countersign the policy in suit.

Whether an agent, in the absence of express authority, can appoint subagents to act for the principal, when judgment and discretion are required, has been the subject of much litigation and especially in insurance cases, and the authorities are not in harmony. This court, in *Trent* v. *Sherlock,* 24 Mont. 255, 61 Pac. 650, said: ''It is the rule that in the absence of authority, either express or implied, to employ a subagent, the trust committed to the agent is personal, and cannot be delegated to another. * * * This is especially true where the performance of the agency requires the exercise of special skill, judgment or discretion.'' However, all of the authorities agree that when, in the execution of the authority granted to the agent, an act is to be performed which is of a mechanical, ministerial or executive character, involving no element of discretion or judgment, the agent may have implied power to delegate his authority to a subagent. The rule is thus stated by Professor Mechem in his work on Agency: ''Where in the execution of the authority an act is to be performed which is of a purely mechanical, ministerial or executive nature, involv-

ing no element of judgment, discretion or personal skill, the reason for the general rule does not apply, and the power to entrust the performance of it to a subagent may be implied." (1 Mechem on Agency, sec. 315.)

In this state, unless specifically forbidden to do so, an agent can delegate his power to another person, "1. When the act to be done is purely mechanical, * * * or, 3. When it is the usage of the place to delegate such powers." (Sec. 7971, Rev. Codes 1921. See, also, Joyce on Insurance, sec. 396; 5 Cooley's Briefs on Insurance, sec. 3988.) "A subagent, lawfully appointed, represents the principal in like manner with the original agent, and the original agent is not responsible to third persons for the acts of the subagent." (Sec. 7973, Rev. Codes 1921.)

Here the policy is a renewal; the risk had been determined ▇ when the original policy was issued. The act of preparing the policy by filling in the blanks and collecting the premium was purely mechanical or executive, not requiring the exercise of judgment or discretion. The uncontradicted testimony shows that Pike was a clerk or assistant to Berglin and for a considerable period of time had handled much of the detail work in connection with issuing policies, and that he issued renewal policies without referring them to Berglin. There is some testimony that this was the custom and usage among insurance agents at Chester, and the evidence tends to prove that the premium paid by plaintiff was deposited to Berglin's account in the bank. Under all the circumstances disclosed by the record, we are of opinion that Berglin had power to, and did, delegate authority to Pike to countersign the policy in suit.

The next question presented is: Did defendant waive proof of loss required to be furnished under the terms of the policy?

The policy contained the usual provision requiring that proof ▇ of loss shall be furnished within sixty days after loss. Such a condition in a policy is a condition precedent, and failure to comply therewith will bar recovery, unless the condition is waived by the company. (*Montana Auto Finance Corp.* v. *Federal Surety Co., ante,* p. 149, 278 Pac. 116;

*La Bonte* v. *Mutual Fire Ins. Co.*, 75 Mont. 1, 241 Pac. 631.) The rule is settled that a failure to furnish proofs of loss is waived by a denial of liability on other grounds. (7 Cooley's Briefs on Insurance, 6019, and cases cited.)

Turning now to the evidence, the undisputed facts upon this question are that on December 9, 1925, the Metropolitan National Company, the holder of a mortgage on the insured premises, notified defendant that the property covered by the policy was destroyed by fire. On December 12, defendant advised that a search of the files failed to disclose a copy of any daily report of any such policy and requested the policy or a photostatic copy of the front page. On December 30 the photostatic copy was furnished as requested. On January 19, 1926, defendant was requested to "advise what progress is being made in adjustment of this loss," to which defendant replied that "we are continuing our investigation." On January 25 defendant wrote: "In view of the fact that no report of the issuance of this policy was ever received by this office, we are continuing our investigation of the same neither admitting or denying liability and without waiving any of the provisions of the policy contract." On January 29 defendant was requested to "please advise how long you expect it will take for you to complete this investigation and how long it will take before you can make adjustment." Not having received a reply to this letter, on February 19 defendant was again requested to "please report to us at this time on your findings in the matter of policy No. 26,833. * * * We do not feel that you are giving this matter the attention which you should. Perhaps we are wrong. If so, please set us right at once." In reply defendant stated that it had been unable to determine whether the premium was paid and, if so, to whom, and that no premium "was ever paid to this office and we also know that no report of the issuance of the policy was ever received at this office," and that the policy was "issued and signed by someone other than our agent Mr. Berglin. * * * In the light of these circumstances we feel inclined to let the assured take the next step." Nothing further was

done until July 22, when plaintiff's attorney wrote defendant at some length and asked a reconsideration of the matter by defendant. Receiving no reply, he again wrote on August 21, to which defendant answered: "If there was a valid policy contract issued to Mr. Altermatt we have waived none, but on the contrary specifically reserve all our rights and defenses thereunder. You are of course privileged to take such action as you deem proper for the best interest of your client." This letter was supplemented by a letter of August 31, to the effect that no daily report of such policy was ever received and that the policy was issued and signed by someone other than its agent, and "we have not been able to satisfy ourselves that a valid contract of insurance was ever entered into with this company," and for the first time mention was made that proof of loss had not been filed: "There have been no proofs of loss and certainly this company cannot do otherwise than object to this claim as being wholly unsupported by any proofs of loss." On December 24 following, plaintiff requested blanks on which to make proof of loss; these were not furnished. This action was commenced December 28, 1926.

We are of opinion that these letters were in legal effect a denial of the existence of a valid policy and a denial of liability. The only reasonable construction of which the language used is susceptible is that defendant did not consider itself liable under the policy. Under the circumstances disclosed, the filing of proof of loss would have availed plaintiff nothing, since defendant had consistently insisted that no daily report of the issuance of the policy was ever received by it; that no premium was paid to it; and that the policy was signed and issued by someone other than its agent.

An insurer, who repudiates a policy and denies liability because there was no valid policy in force at the time of the loss, is not in a position to insist that insured has lost his rights thereunder for failure to file proof of loss, as required by the policy. (*Singer* v. *Insurance Co.*, 154 App. Div. 783, 139 N. Y. Supp. 375; *Lloyd* v. *Insurance Co.*, 174 App. Div. 371, 161 N. Y. Supp. 271; *Queen of Arkansas Ins. Co.* v. *Laster,*

108 Ark. 261, 156 S. W. 848; *Improved Match Co.* v. *Michigan Fire Ins. Co.*, 122 Mich. 256, 80 N. W. 1088; *Hicks* v. *British American Assur. Co.*, 13 App. Div. 444, 43 N. Y. Supp. 623; *Knickerbocker Life Ins. Co.* v. *Pendleton,* 112 U. S. 698, 28 L. Ed. 866, 5 Sup. Ct. Rep. 314.)

Further, at no time prior to August 31, 1926, did defendant specifically object upon the ground that plaintiff had failed to file proof of loss. Section 8145, Revised Codes of 1921, says: "Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by any act of his, or if he omits to make objection promptly and specifically upon that ground." The contention of counsel for defendant that the language used in the letters, "and without waiving any of the provisions of the policy," is sufficient, cannot be sustained. The language used in section 8145, supra, is plain and requires prompt and specific objection if the insurer expects to rely upon insured's failure to furnish proof of loss as required by the terms of the policy.

Plaintiff predicates error upon the court's rulings excluding testimony tending to prove usage and custom at Chester, regarding clerks and assistants signing insurance policies in the name of the agent, as was done by Pike in issuing the policy in suit. We think the court erred. This character of testimony is admissible under the provisions of section 7971, supra.

For the reasons given the judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.