Glou *v.* Security Benefit Association, Appellant.

Argued March 5, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*W. J. Fitzgerald* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellant.

*J. Julius Levy,* and with him *Irving L. Epstein,* for appellee.

OPINION BY PARKER, J., July 13, 1934:

The defendant has appealed from a judgment for the plaintiff, the beneficiary in a fraternal benefit certificate issued by defendant, and has assigned as errors the refusal of defendant's request for binding instructions and its motion for judgment n. o. v. There are no assignments of error directed to the admission of evidence or to the instructions contained in the charge of the trial judge, save only the refusal to give binding instructions for the defendant. The ultimate question involved is, therefore, whether the evidence was sufficient to support the verdict.

The plaintiff based his claim on a benefit certificate for $2,000 dated September 30, 1926, and issued by the defendant, a fraternal benefit association licensed to transact business in Pennsylvania, on the life of Rose Glou and payable to her son, Herman Glou. The defendant, admitting the existence of the certificate, defended on the ground that the certificate had been issued in reliance upon a written application of Rose

Glou in which Rose Glou is alleged to have stated her age to have been less than it was at the time and stated that she had no other insurance on her life when, in fact, she did, which statements she warranted to be true. It is well settled by the law of this state that statements of the character alleged to have been made by the insured are material: Livingood v. N. Y. Life Ins. Co., 287 Pa. 128, 131, 134 A. 474; March v. Metropolitan Life Ins. Co., 186 Pa. 629, 40 A. 1100; and that if such statements are warranties and untrue, the policy is voided: Smith v. Northwestern Mutual Life Ins. Co., 196 Pa. 314, 46 A. 426. The issue, it will be noted, arose on an affirmative defense which attacked the validity of the certificate for an alleged breach of warranty made previous to the issuing of the certificate and not by virtue of anything that occurred after the certificate was delivered.

While the issue was clearly defined, it is necessary to recite the proofs in some detail to reach the precise question involved. The plaintiff showed by the admissions of the defendant the issuing of the policy, payment of all assessments, death of the insured, and filing of proofs of death with the company. Likewise, the certificate and the constitution and by-laws of defendant were produced and offered. The certificate of insurance contained the following stipulation: "This Certificate, together with the Charter and the Constitution and Laws of the Society and all amendments to each thereof, and the application for membership and medical examination signed by the member, which are made a part hereof, shall constitute the agreement between the member and the Society." The plaintiff then made proof of a notice to the defendant to produce the written application of Rose Glou which the defendant alleged by the pleadings it had in its possession. On its produc-

tion, the plaintiff had it identified but did not offer it, but gave proof tending to show that the application produced was not signed in the handwriting of the applicant. It was apparent from an inspection of the signature and by a comparison of it with a genuine signature of the insured that the signature to the application was not that of Rose Glou. Counsel for the defendant then stipulated that "he would not question the testimony of the witness" nor dispute the allegation that the signature was not that of Rose Glou. In turn, plaintiff admitted that the age (45) given in the alleged application was not correct and that Mrs. Glou was, in fact, 53 when the policy was issued and that at that same time she had other insurance on her life.

The deposition of the secretary of defendant company was then offered by the defendant. He testified that he had occupied that office since 1918 and kept the records, and when applications were approved that he issued certificates. He identified the application produced and stated that it was on that application that the certificate was issued and that it was the only application he ever received, but that the application came to him after it had been passed on by the medical examiner and was accompanied by recommendations of such examiner. He also stated that the duty of passing on all applications and deciding whether to issue a certificate was vested exclusively in him. In rebuttal, the plaintiff called a neighbor, Mrs. Post, who testified that she had been a member of the defendant association and had solicited Mrs. Glou to become a member and take insurance. She further said that she procured a blank application, that Mrs. Glou signed it in her presence and delivered it to her, and that she, in turn, handed it to Thomas McCann who had been soliciting insurance for the defendant company. The secretary of

the association testified that McCann had never been an agent of the defendant association.

We are of the opinion that when plaintiff proved and offered the original certificate, constitution, and by-laws of the defendant company and showed by the testimony of the national secretary that it could not produce an application signed by Rose Glou, a prima facie case was made out for plaintiff. In the case of Tkatch v. Knights & L. of Security, 264 Pa. 578, 580, 107 A. 890, which involved a certificate of the same general nature, the case was affirmed on the opinion of the court below wherein it was said: "When a breach of any particular condition is relied upon, the defendant has the burden of proving it. The certificates in the hands of the defendant [plaintiff] promising to pay a specific sum to her on the death of her husband created in her favor a presumption that the deceased had paid the dues essential to the original validity of the certificate, which presumption continues until it has been overcome by proof that validity is lost through nonpayment or other violation of conditions.'" "Where plaintiff has introduced evidence sufficient to establish a prima facie case, the burden is then on defendant to disprove such facts, or to adduce evidence to sustain matters of affirmative defense set up by it, such as breach of warranty or condition in general; fraud or misrepresentation by the insured member": 45 C. J. 302. Also, see Crumpton v. Pittsburgh Council, 1 Pa. Superior Ct. 613. Suravitz v. Prudential Ins. Co., 261 Pa. 390, 104 A. 754, was a case in which the identity of the person who was examined for insurance was involved, and the court held that this was an affirmative defense of fraud involving the allegation of the existence of specific facts, and the burden was on the defendant to prove such facts by a preponderance of clear and satisfactory evidence.

In discussing burden of proof, Professor Wigmore (5 Wigmore on Evidence §2486) said: "The truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations." Frequently a consideration of whether the allegation is negative or affirmative, by which party the allegation is asserted, and the person within whose knowledge the facts peculiarly lie are of assistance in determining where the burden should be placed. An application for membership is directed to the association, and it undoubtedly relies upon the representations or warranties, as the case may be, in issuing a certificate, and such application is therefore naturally held by the association. The company or association issuing the policy is vitally interested in the paper and would naturally preserve it. Such insurance frequently runs for a long period of years and it is unreasonable to assume that an applicant, after a period of years, would be able to produce a copy of the writing or prove its contents. While the application, if one exists, is made a part of the contract by both the law of the state and the agreement of the parties, such provision is for the benefit of the company, and the burden is and should be upon it to produce it when required. Such defense as it may have to the policy on account of matters contained in the application constitutes an affirmative defense, as we have shown, and the burden, therefore, is on the company to produce it.

The able counsel for the appellant also urges very forcibly (1) that, there being no evidence of an application signed by the applicant and actually delivered to the secretary of the association, there cannot be a valid and enforceable contract of insurance; and (2) that if the policy was issued pursuant to an application that was not that of the applicant, there

was no contract, drawing an analogy with the case of tender and acceptance where it is essential to the existence of a contract that there should be an actual proposal by the offeror to the offeree and that the offeree must know that a proposal had been made to him (1 Restatement of the Law of Contracts §23). In support of the first contention, the appellant calls attention to the Act of May 20, 1921, P. L. 916, §8 (40 PS 1019), regulating fraternal benefit societies, which provides that such certificate shall specify the amount of benefit furnished and shall provide "that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, the constitution, and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the obligation of the society." He also relies on the provisions of the certificate which we have recited above.

While the act of assembly contemplates an application, this was apparently done for the protection of the association, and if it neglected to obtain an application signed by the insured, it could not take advantage of its own failure to follow the prescribed method after it had actually issued a certificate or policy which definitely fixed the mutual obligations of the parties. If an application signed by the applicant was actually made, then by the terms of the act and the contract of the parties it would have been a part of the entire contract or, as the act of assembly expresses it, a part of the obligation of the society. An insurer has a right to accept or reject insurance upon terms and conditions fixed by the insurer and where it does so a contract exists: 32 C. J. 1102. The requirement as to an application both in the act of assembly and in the contract, it is most apparent, was inserted so that the company might judge whether or

not it was advisable to issue a policy and, therefore, if it saw fit to so do without a written application, it certainly waived such requirement. We do not find anything in the act of assembly providing for the regulation of fraternal benefit societies which suggests that a failure to have an application shall render a policy void. Neither is the principle involved here which requires the communication of an offer, for the parties embodied in the certificate the terms of their contract which is understandable and enforceable by reference to that writing alone and which, it is admitted, was performed.

The same reasoning answers the objection that is based on the testimony of the secretary that he issued the certificate relying on the application he says he had before him. It is unreasonable to assume that there had not been communications between Mrs. Glou and the association before the policy was issued. In fact, as the evidence recited shows, she did sign an application which was delivered to a member of the association and which was not produced by that association. We believe that that evidence was competent; even though the plaintiff was unable to prove that the application which she signed actually reached the secretary, it had some probative value. This was a fraternal organization and members would naturally be obtained by solicitation from those within the organization. It would be on rare occasions that an applicant for insurance in a fraternal organization would actually deliver an application to the chief officer of the organization. Such transactions are not usually performed in that way.

The plaintiff produced evidence from which the jury might have found that Mrs. Glou signed an application and delivered it to a member of the local chapter, and that a short time thereafter she received a certificate of insurance and complied with the terms

of that certificate until her death. From this the jury might have inferred that the certificate was issued by virtue of such an application and not as a result of another and different one which was never signed by the insured. There may have been a substitution by mistake or otherwise after the application signed by Mrs. Glou reached the head office and before it came to the secretary, or various other theories may be suggested. These facts raised questions for a jury. "On a motion for judgment n. o. v. the testimony should not only be read in the light most advantageous to the plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence": Guilinger v. P. R. R. Co., 304 Pa. 140, 144, 155 A. 293. It is significant that the company failed either to call the witness to the alleged application or account for his absence. They had in their possession the application prior to trial and, being warned of the situation, would naturally have sought him for the purpose of obtaining the facts. If we even assumed that the policy was issued in reliance upon an application which was not the application of the defendant, the association is not in any better position. Rose Glou started on its way an application signed by her, so the jury might have found, and, later received a policy the conditions of which she performed and by the terms of which the plaintiff is now entitled to a payment. The company cannot take advantage of the fact, without explanation, that another application appeared which was not that of Rose Glou. The responsibility was on the company to procure such an application as would protect it from any misrepresentations made by one wishing to become a member, and if it failed so to do or is unable to prove the fact, it must bear the con-

sequences. The plaintiff held a certificate and he showed by the admissions of the defendant full compliance with its conditions and thereby made out a prima facie case. This was entitled to stand until it was overcome by proof that validity was lost by reason of a breach of representations or warranties made when the policy issued. The defendant failed to meet the burden imposed upon it and must stand the consequences.

Appellant also raises a question as to a variance between the pleadings and proofs. We do not find any merit in this contention. A variance between a contract declared upon and that shown by the evidence is not good ground for reversal after trial on the merits where the evidence was admitted without objection and no surprise was alleged or continuance requested: Finkelstein v. Spatt, 50 Pa. Superior Ct. 293; Ogden v. Belfield, 82 Pa. Superior Ct. 534, 536; Achenbach v. Stoddard, 253 Pa. 338, 98 A. 604; Grange Nat. Bank v. Collman, 306 Pa. 200, 159 A. 26.

In charging the jury the trial court gave instructions that, if a verdict was found for the plaintiff, it should be for $1,400 and not for the $2,000 claimed, for the reason that the actual age of the insured was less than the amount corresponding with the premiums paid, and it was agreed by counsel that such premiums as were paid would purchase only $1,400 insurance. This was fair and no objection was raised by the plaintiff.

Judgment of the lower court is affirmed.