CLAYTON J. BRISTOL, EXECUTOR (ESTATE OF CANDACE B. KEELER), ET AL. *v.* COMMERCIAL UNION LIFE INSURANCE COMPANY OF AMERICA
(13591)

PETERS, C. J., CALLAHAN, COVELLO, HULL and MENT, Js.

Argued March 8—decision released June 27, 1989

*Duncan B. Hume,* for the appellant (defendant).

*David S. Grossman,* for the appellee (plaintiff).

HULL, J. This appeal arises from an action brought by the plaintiff, Clayton J. Bristol, in his capacity as guardian of the estate of minor beneficiary Kevin R. Keeler, against the defendant, Commercial Union Life Insurance Company of America, to recover under a policy of insurance issued by the defendant on the life of the decedent, Candace B. Keeler. In its answer the defendant admitted that on February 24, 1986, in exchange for a premium check received in the amount of $1013.60, it issued a policy insuring the life of Ms. Keeler for $100,000. The defendant claimed by way of special defense, however, that it was not obligated to pay on the policy after Ms. Keeler's death because Ms. Keeler had allegedly made a material misrepresentation concerning her medical history in three separate application forms upon which the defendant purportedly relied in issuing the life insurance policy in question. The case was tried to the court. In its memorandum of decision the trial court concluded, for various reasons, that the defendant was not entitled in its defense to rely upon the allegedly false statements contained in any of the three application forms, and that it was therefore precluded from denying coverage. Accordingly, the trial court rendered judgment in favor of the plaintiff and ordered the defendant to pay the plaintiff the face amount of the policy, plus costs and interest. This appeal by the defendant ensued. We find no error.

The complicated factual background of this appeal is as follows. On February 4, 1986, an insurance agent for the defendant visited Ms. Keeler at her home in Durham. This visit was prompted by Ms. Keeler's desire to purchase life insurance, a matter that she had discussed previously with the insurance agent, Kevin Ryan. As a necessary first step toward obtaining coverage, Ms. Keeler was required to fill out an application form. Ms. Keeler intended to purchase life insurance from the defendant, Commercial Union Life Insurance Company *of America* (CU of America); Ryan, however, mistakenly provided Ms. Keeler with an application form from Commercial Union Life Insurance Company of *New York* (CU of New York), a separate but "related" company of the defendant. This oversight went undetected as Ryan and Ms. Keeler proceeded to fill out the application. The application was completed through a question and answer process: Ryan read Ms. Keeler the questions contained in the application, she verbally responded to these inquiries, and he transcribed her answers onto the appropriate answer spaces in the application. In response to a particular question inquiring whether the applicant had ever received treatment for alcoholism, Ms. Keeler answered "no."[1] After all the necessary answers and information had been transcribed, Ms. Keeler signed the application in three places. The application, dated February 4, 1986, was then submitted to the defendant.

The defendant admits that in exchange for an annual premium received from Ms. Keeler, it issued a policy on February 24, 1986, insuring her life for $100,000. The "General Provisions" portion of this policy pro-

---

[1] The application form is designed so that many of the questions relating to an applicant's insurability may be answered by checking one of two boxes marked "yes" and "no" located next to each question. In response to the question concerning prior treatment for alcohol abuse, the "no" box is checked.

vides that "[t]he entire contract consists of this contract, any attached riders and the application . . . a copy of which is/are attached. . . . We will not use any statement to void this contract or to defend a claim under it, unless that statement is in an attached written application." The policy did have attached to it an application; it was not, however, the same application, to CU of New York, that Ms. Keeler had filled out and signed on February 4, 1986. Rather, the document attached to the policy was a CU of America application form, which, except for the company name printed across the top of the first page, is virtually identical in design to the CU of New York application form completed by Ms. Keeler. This new application annexed to the policy contained the same answers that Ms. Keeler had provided in her first application to CU of New York; however, unlike those in the first application, the answers in this new application were typed rather than handwritten, and, further, the application was unsigned and undated.

The defendant acknowledges that the only plausible explanation for this unusual occurrence is that at some point prior to the issuance of the policy the defendant realized that Ms. Keeler's first application was filled out on the "wrong" company form, i.e., on a CU of New York application form, and that it therefore took the liberty of copying the information contained in that first application form and transferring it onto a "correct" application form bearing the defendant's name, CU of America. This was done without the knowledge or assistance of Ms. Keeler. Then, upon issuance of the policy, this unsigned CU of America application form was annexed to the policy in lieu of the CU of New York application form that had been completed and signed by Ms. Keeler on February 4, 1986. Thereafter, the policy was sent by the defendant to Ryan, who was then supposed to deliver it to Ms. Keeler. The record dis-

closes, however, that the policy was never actually delivered to Ms. Keeler. Under cross-examination at trial, Ryan admitted to having stated previously under oath at his deposition that the defendant had sent the policy directly to him and that he had retained possession of the policy until Ms. Keeler's death, thereafter delivering it to the executor of her estate.

In addition to the unsigned and undated CU of America application form annexed to the policy, there is also another CU of America application form, dated March 17, 1986, involved in this case. The defendant concedes on appeal, however, that it is not entitled in its defense to rely upon the statements contained in this latter application form. We agree with the defendant that this third application form has no bearing on the issues raised in this appeal and conclude that a discussion of the rather vague circumstances surrounding its appearance in this case would only serve further to complicate, unnecessarily, the factual history of this appeal. Therefore, we shall confine the bulk of our commentary regarding this third application to a footnote.[2]

Ms. Keeler died on December 18, 1986. A certified copy of the death record reveals that the immediate cause of death was "cardio-pulmonary arrest," "hepatic [liver] failure," and "fulminant hepatic necrosis (question of)." Shortly after Ms. Keeler's death, the plaintiff submitted to the defendant proof of death and demanded payment of the face amount of the policy.

[2] Although the chronology of events leading up to the creation of this third application is unclear, the record reveals the following: Sometime after it received Ms. Keeler's first application form, the defendant notified Ryan that the application had been completed on the wrong form (CU of New York) and that it was necessary to have the application resubmitted on the correct form (CU of America). Ryan in turn contacted Ms. Keeler by telephone, informed her of the problem and requested permission to resubmit her application on a CU of America form. She agreed that this could be done. The CU of America application form earmarked by Ryan for resubmission had already been filled out with the same answers that Ms. Keeler

The defendant declined, claiming that the applications involved in this case contained material misrepresentations made by Ms. Keeler that lawfully relieved it of any obligation to pay on the policy. Specifically, the defendant maintained that Ms. Keeler's death was directly attributable to her excessive use of alcohol, and that she had falsely represented in the applications that she had never received treatment for alcohol abuse. Upon denial of his demand for payment, the plaintiff instituted this action against the defendant on behalf of the named minor beneficiary to recover the proceeds of the policy. In its answer to the plaintiff's complaint, the defendant asserted the special defense of material misrepresentation.

After a trial to the court, the court found in favor of the plaintiff. The court, however, never reached the issue of whether Ms. Keeler had actually made a material misrepresentation in the applications. Instead, the court ruled that the defendant was not entitled to rely upon the statements contained in any of the three applications and that it was therefore barred from raising a defense of material misrepresentation. In particular, the court held that the statements contained in the signed application dated February 4, 1986, could not be used by the defendant against Ms. Keeler since the statements were made on an application form to a different company, i.e., CU of New York. As for the

had provided in her first application, and all that was needed to complete the application was Ms. Keeler's signature. Ms. Keeler, however, did not sign this application; instead, Ryan signed her name on the application and then submitted it to the defendant. Ryan claims that this was done with Ms. Keeler's express permission. The application is dated March 17, 1986. For purposes of this appeal, the most significant fact concerning this third application is that it was not attached to the policy.

Curiously, the record is devoid of any explanation as to why Ryan would choose to submit this CU of America application dated March 17, 1986, rather than simply having Ms. Keeler sign the CU of America application form that had been attached by the defendant to the policy issued on February 24, 1986, which apparently was in his possession at the time.

CU of America application form annexed to the policy, the court concluded that because that application was unsigned, the statements contained therein could not be attributed to Ms. Keeler and hence could not be used against her. Finally, the court ruled that the CU of America application form dated March 17, 1986, was invalid and could not be relied upon by the defendant, apparently because it postdated the policy. The court's refusal to recognize the validity of any of the applications, or the representations contained therein, effectively precluded the defendant from denying coverage under the doctrine of material misrepresentation. The defendant has appealed from this adverse judgment.

In view of the previously noted policy language declaring that the defendant "will not use any statement to void this contract or to defend a claim under it, *unless that statement is in an attached written application*"; (emphasis added); the defendant concedes on appeal that it was not entitled in its defense to rely at trial upon the statements contained in either the CU of New York application form dated February 4, 1986, or the CU of America application form dated March 17, 1986, since it is undisputed that neither of these application forms was ever attached to the policy. Accordingly, our attention is focused upon the remaining application form, i.e., the unsigned and undated CU of America application form annexed to the policy that contains answers copied from the earlier CU of New York application form signed by Ms. Keeler.

Under Connecticut law, a misrepresentation material to the risk that is knowingly made by a proposed insured will defeat recovery under a life insurance policy. *State Bank & Trust Co.* v. *Connecticut General Life Ins. Co.,* 109 Conn. 67, 70–72, 145 A. 565 (1929); see *Lazar* v. *Metropolitan Life Ins. Co.,* 290 F. Sup. 179, 180 (D. Conn. 1968). The defendant maintains that it was entitled to rely in its defense at trial upon the

alleged material misrepresentation contained in the unsigned CU of America application form attached to the policy, "the lack of signature being of no effect." In essence, the defendant argues that because the statements contained in that application form were copied verbatim from the earlier, nearly identical CU of New York application form signed by Ms. Keeler, such statements properly may be considered her own and hence may be used against her. On the other hand, the plaintiff contends that, absent some type of affirmative ratification or adoption by Ms. Keeler of the statements contained in the CU of America application form, the defendant has no right to rely upon them simply because they are identical to prior statements made by Ms. Keeler in an application to another insurance company. We agree with the plaintiff.

We fail to see how Ms. Keeler may be bound by statements contained in an application form that she never independently ratified or adopted in some manner. Ms. Keeler was never personally asked the questions listed in the application form annexed to the policy, never signed that application form and was never provided an opportunity to review the answers contained in that application form since the policy was never delivered to her. There is nothing from which an adoption or ratification of the answers contained in the application form may be implied on the part of Ms. Keeler in this case. Absent such a ratification or adoption, Ms. Keeler cannot be bound by the statements contained therein.

Our position on this matter is not altered by the fact that the answers contained in the unsigned CU of America application form annexed to the policy were copied verbatim from Ms. Keeler's earlier, signed application form to a different insurance company, i.e., CU of New York. Such an occurrence does not obviate the need for ratification. "In the United States the rule is that a representation to one insurer cannot be evidence

of a like representation to another insurer, on application for a different policy, on the same . . . risks." 7 G. Couch, Insurance Law 2d § 35:135; see also *Harmony Fire & Marine Ins. Co.* v. *Hazlehurst,* 30 Md. 380 (1869); *Vilas* v. *New York Central Ins. Co.,* 72 N.Y. 590 (1878); *Cleavenger* v. *Franklin Fire Ins. Co.,* 47 W. Va. 595, 35 S.E. 998 (1900). We conclude, therefore, that the defendant's failure to obtain from Ms. Keeler a ratification or adoption of the statements contained in its application form foreclosed it from relying on those statements in its defense.[3]

There is no error.

In this opinion the other justices concurred.

---

[3] We note that our conclusion that the application is without binding force and effect does not affect the validity of the contract of insurance itself. Although an application is normally required for the completion of a contract of insurance, "[a]n application is not always a requisite, since the insurance company may make a binding contract of insurance by delivering a policy and accepting the premium thereon, even though the insured never requested that the policy be issued. In such a case the insurer is estopped from contending that, in consequence of the want of a proposal, there was no contract." 1 G. Couch, Insurance Law 2d § 7:2; see *Phillips* v. *Brotherhood of Railway & Steamship Clerks,* 226 Iowa 864, 285 N.W. 159 (1939); *T. E. Haddox & Co.* v. *Ohio Valley Fire & Marine Ins. Co.,* 188 Ky. 680, 223 S.W. 1009 (1920); *Glou* v. *Security Benefit Assn.,* 114 Pa. Super. 139, 173 A. 883 (1934).

It is undisputed that the defendant accepted a premium check from Ms. Keeler and in exchange therefor issued a policy insuring her life. Further, although Ms. Keeler never actually received the policy, the delivery of the policy to Ryan was sufficient to put it into effect: "Delivery of the policy to a broker employed by the insured to procure it constitutes delivery to the insured, even though the applicant died without having received it, provided the delivery is unconditional." 1 G. Couch, supra, § 10:17; see, e.g., *Mutual Life Ins. Co.* v. *Thomson,* 94 Ky. 253, 22 S.W. 87 (1893); *Michelson* v. *Franklin Fire Ins. Co.,* 252 Mass. 336, 147 N.E. 851 (1925); *Singer* v. *National Fire Ins. Co.,* 154 App. Div. 783, 139 N.Y.S. 375 (1913). Accordingly, the policy is not invalidated for lack of a binding application nor by the failure of Ryan to deliver the policy to Ms. Keeler.