## PORTER NEEDLE CO. v. NAT. NEEDLE CO.

*(Circuit Court, D. Massachusetts.   August 20, 1883.)*

1. PATENTS FOR INVENTIONS—CONTRACT CONSTRUED—INJUNCTION.

    In a suit to enjoin defendants from the use of seven machines containing certain patents owned by complainant, defendant set up in defense a contract as follows:

    "In consideration of the receipt in full of all bills and demands held against the Cook & Porter Needle Company by the National Needle Company, I do hereby agree to allow the National Needle Company the free use of the seven patent reducing, belting, and pointing machines now in their possession, from July 2, 1877, until April 1, 1878, and the further use of said machines at a royalty of one-quarter the saving made by the above-named machinery over the same class of work done by hand from April 1, 1878, to July 1, 1880.

    "The said seven machines are valued at eight hundred dollars, the receipt of which is acknowledged, and are exchangeable, either separately or together, for other machines made under the same letters patent, at the same *pro rata* valuation; the difference in price of machine, if any, to be paid by the said National Needle Company.

    "I grant the above right to use said patented machines by virtue of my ownership of [mentioning several patents,] and the National Needle Company is to have the right to use, without extra royalty, any improvement made, or caused to be made, by me on said machines, during the time of this agreement.

    "*Newton, September* 12, 1877."

    *Held*, that defendants took, in part payment of their debt, the seven machines at their cost, and could use them without royalty until April 1, 1878, and on payment of the stipulated royalty from that time to July 1, 1880, but that no arrangement was made for the remainder of the term; that it was not intended that defendant should thereafter use the machines without payment of royalty unless some new bargain should be made; that this limitation was not repugnant to the grant; and that defendants should be enjoined from the further use of the machines.

2. SAME—SALE OF PATENTED MACHINE—RIGHT OF USE.

    An absolute and unqualified sale of a patented machine carries with it the right of use, but the courts will permit a severance of ownership and right of use where the patentee has chosen to dissever them, and his intention to do so is not doubtful.

In Equity.

*E. W. Clarke*, for complainants.

*J. E. Abbott*, for defendants.

Before LOWELL and NELSON, JJ.

LOWELL, J.   The plaintiffs have succeeded to the rights and liabilities of the Cook & Porter Needle Company, and of Lewis B. Porter, in respect to certain patents, and the contracts and dealings relating thereto.   They bring this suit to enjoin the use of seven machines, containing improvements in the art of grinding needles, invented by one Mallett, for which a patent (No. 172,639) was issued to the Cook & Porter Needle Company, January 25, 1876.   It is agreed that since July 1, 1880, the defendants have used six machines containing the improvements.   The dispute turns on the construction of a contract between Lewis B. Porter and the defendants, which the plaintiffs call a lease of the machines, and the defendants, a sale.   The contract is as follows:

" In consideration of the receipt in full of all bills and demands held against the Cook & Porter Needle Company by the National Needle Company, I do hereby agree to allow the National Needle Company the free use of the seven patent reducing, belting, and pointing machines now in their possession, from July 2, 1877, until April 1, 1878, and the further use of said machines at a royalty of one-quarter the saving made by the above-named machinery over the same class of work done by hand from April 1, 1878, to July 1, 1880.

" The said seven machines are valued at eight hundred dollars, the receipt of which is acknowledged, and are exchangeable, either separately or together, for other machines made under the same letters patent, at the same *pro rata* valuation; the difference in price of machine, if any, to be paid by said National Needle Company.

" I grant the above right to use said patented machines, by virtue of my ownership of [mentioning several patents,] and the National Needle Company is to have the right to use, without extra royalty, any improvement made, or caused to be made, by me on said machines, during the time of this agreement.

"*Newton, September* 12, 1877.        LEWIS B. PORTER,
                                            "National Needle Co.
                                " GEORGE H. BLELOCH, Manager."

Before the date of this agreement, the defendants held a license to use these machines for one-half the saving over hand labor.  They had various dealings with the owners of the patents in making and storing machinery, etc., and on the twelfth of September were creditors of Porter and his company for a sum which they estimated at $3,400, and Porter at $1,700, in settlement of which this contract was made, by which the defendants were released from the payment of the royalty before agreed on, for 9 months; and for the next 27 months, to July 1, 1880, the royalty was fixed at one-half the former rate.  Besides this, certain belting and shafting, estimated to be worth $400, was conveyed to them by Porter by a bill of sale in due form.

Some evidence has been given of the value of the use of the machinery, which tends to prove that the royalties upon them, to the expiration of the patent, would very much exceed the debt due from Porter to the defendants.  There is evidence that the plaintiffs, to the knowledge of the defendants, intended to make use of the patents, not by selling machines, but by letting them to hire with a royalty payable monthly.

Considering the evidence, we find that the plaintiffs did not grant to the defendants the absolute right to use the machines, but a right conditioned on the payment of a royalty, the terms of which were fixed to July 1, 1880, and after that time were left to future negotiation, whether purposely, or by an oversight, is not material.

We agree that the words, "the said seven machines are valued at $800, the receipt of which is acknowledged," import a sale of the machines; and that an absolute and unqualified sale of a patented machine carries with it the right of use.  But the mere value of a patented machine is often, and is proved to be in this case, insignificant in comparison with the value of its use; and the courts have per-

mitted a severance of ownership and right of use, if the patentee has chosen to dissever them, and if his intent is not doubtful.    For instance: a license to use a machine implies the right to make and own it; and yet, if the owner neglects to pay the license fee, he may be restrained from using a machine to which his title is undoubted. One who is licensed to make, use, and sell machines for the term of the patent, and no longer, sells a machine with the right to use it. The purchaser owns the machine; but if the patent is extended, he has no right to use it, during the extended term, without a further license from the patentee.    *Mitchell* v. *Hawley*, 16 Wall. 544.    In many other cases the ownership of the machine will not necessarily carry with it the right to use it without the permission of the patentee. See *Jenkins* v. *Greenwald*, 2 Fisher, 37; *Woodworth* v. *Curtis*, 2 Wood. & M. 524; *Steam Cutter Co.* v. *Sheldon*, 10 Blatchf. 1.

We find that this somewhat imperfect contract means that the defendants take, in part payment of their debt, the seven machines at their cost, and may use them without royalty until Aprll 1, 1878, and on payment of the stipulated royalty for that time to July 1, 1880; and that no arrangement is made for the remainder of the term; that it was not intended that the defendants should thereafter use the machines without payment of royalty unless some new bargain should be made; and that this limitation is not repugnant to the grant.    The result is that the decree must be for the complainants.