MUZAK CORPORATION, Appellant, *v.* HOTEL TAFT CORPORATION, Respondent.

First Department, May 3, 1955.

*Irving P. Schlesinger* of counsel (*Patricia Hatry* with him on the brief; *Davis & Gilbert,* attorneys), for appellant.

*Herbert L. Ortner* of counsel (*Irving M. Moss* with him on the brief; *Arthur Richenthal,* attorney), for respondent.

RABIN, J.   This is an appeal from a determination of the Appellate Term which reversed a judgment in favor of plaintiff in the Municipal Court and dismissed the complaint.

In April, 1937, an agreement was made by the plaintiff's and defendant's respective predecessors to install in the defendant's hotel and to lease to it all the necessary mechanical and electrical equipment for the reception of the program service of Muzak Corporation and all space radio programs and the transmission thereof to the rooms in the hotel.   Title to the equipment was to remain in the plaintiff and upon termination of the contract it was all to be returned.   Paragraph 5 of the agreement is in part as follows: " We agree to rent the equipment described above from you and to pay to you therefor a rental of $600.00 per month for the first fifty-four months of the term thereof, and a rental of $1.00 per annum thereafter, each installment of rental to be paid in advance.   In addition we agree to pay to you, as a license fee for the use of such equipment, the sum of $100.00 per month, payable in advance."

Paragraph 7 provided in part as follows: " This arrangement shall be for a period of fifty-four months from the date installation of such equipment is completed, and shall continue thereafter until terminated by us upon two months' prior written notice to that effect."

In addition, paragraph 7 gave the plaintiff the right to repossess the equipment in the event that defendant should fail to turn it over to the plaintiff upon the termination of the contract.

Monthly payments of $600 were made by the defendant as stipulated until May, 1940, at which time there were still unpaid, twenty monthly payments amounting to $12,000 covering the balance of the fifty-four month period.   At that time the parties agreed to a modification of the earlier contract.   The original rental provision was completely eliminated and instead title to all the equipment was transferred to the defendant in return for the payment of $10,260 in cash.   Title was transferred to the defendant by bill of sale.   The 1940 modification contained the following provision: " It is understood and agreed that the obligation of Hotel Taft Corporation to continue to pay the license fee specified in Article 5 of the agreement dated April

14, 1937 shall, irrespective of the modification made hereby, remain in full force and effect."

Defendant for twelve years after the modification continued to pay the sum of $100 a month to plaintiff but on June 27, 1952, notified plaintiff in writing that it was canceling the contract of April, 1937, as amended, and that payment of further license fees would cease as of August 31, 1952. Plaintiff thereafter instituted an action in the Municipal Court to recover the monthly payments of $100 which it claimed were due under the agreement.

In reversing the judgment in plaintiff's favor the Appellate Term held that, defendant having terminated the contract according to its terms, there was no further obligation to continue the monthly $100 payments.

Plaintiff's contention is that despite defendant's written notice of cancellation of the contract the obligation to pay $100 a month thereunder continued. Although in the lower courts plaintiff did not question defendant's right to cancel the contract so long as it discontinued use of the equipment, plaintiff now challenges that right and argues that the 1940 modification destroyed the cancellation provision contained in the original agreement. We do not agree. The 1940 modification provided: " Except as hereby modified or inconsistent herewith, the said agreement of April 14, 1937 shall remain in full force and effect."

Unless, therefore, the 1937 cancellation clause was inconsistent with the 1940 modification it remained in force, for there was no modification of that clause. There does not appear to be the slightest inconsistency nor has any been pointed out. Even though the 1940 agreement provided that payments of $100 a month would continue despite the discontinuance of the $600 and $1 monthly payments, there was nothing in the 1940 agreement indicating either that it was to continue indefinitely or that the contract was to be terminated in any other way than that specified in the original agreement. It was important, however, to include the provision for continuance of the $100 monthly payments in order to assure that plaintiff would receive that sum for the minimum period of fifty-four months or until the contract should be cancelled. No other significance could be attached to that clause. The cancellation clause not having been modified or changed by the 1940 agreement and being in noway inconsistent with that agreement it remained in full force and effect and, therefore the defendant had the right to cancel in accordance with its terms.

The fact that defendant continued making the monthly payments of $100 until 1952 and made no attempt to cancel the contract before then is claimed to be indicative of a practical construction of the contract inconsistent with the defendant's present position.

There was not necessarily any inconsistency in defendant's making the $100 monthly payments for twelve years. No payments were made after the notice of cancellation. The record does not reveal what considerations motivated the defendant in not canceling the contract until 1952, but it might very well have been that defendant did not want to lose the right to employ the plaintiff's wired music programs. On the argument of this appeal it was stated that defendant had been using that service and paying a separate fee for it. There is also evidence in the record that during the period from 1937 onward, defendant was subscribing to the Muzak Wired Program Service. Whenever, after the 1940 modification defendant would elect to cancel, it would, at the same time, lose the right to continue purchasing the plaintiff's program service. It is possible that defendant wished to continue that service and only in 1952 decided to dispense with it by canceling the contract. It cannot reasonably be concluded therefore that by making payments until 1952, defendant acted inconsistently with its right to cancel or admitted by its acts that it must continue to pay $100 a month indefinitely. Of course, until the cancellation of the contract, defendant was obligated to and did pay the fee of $100 a month.

Plaintiff freely admits that defendant owns the equipment and has the right to destroy it or otherwise dispose of it, but contends nevertheless that defendant has no right to make use of the equipment in its premises unless it pays plaintiff $100 a month under an agreement which defendant heretofore, and as of right, has cancelled.

The fact that some or all of the equipment installed by plaintiff was protected by patents would not serve to deprive defendant of its right to use the equipment, for the sale of the property was absolute, and just as with the sale of any patented article, there naturally goes with it the right to use it, in the absence of some curtailing agreement. Neither in the bill of sale nor in the agreement was there any restriction on the use of the property.

If plaintiff has a claim against the defendant based upon a violation of patent rights, that claim may be asserted elsewhere but certainly may not be the subject of this action which is brought pursuant to the contract. Since that contract contains

no provision obligating defendant to pay $100 a month to plaintiff after its cancellation, plaintiff is not entitled to recover. To find for plaintiff would require our reading into the contract a provision which is not there.

The determination of the Appellate Term should be affirmed.

Bastow, J. (dissenting). In April, 1937, plaintiff's predecessor, Wired Radio, Inc., and the defendant hotel entered into an agreement in writing in connection with the reception by the hotel of the program service of the plaintiff and the transmission thereof to rooms in the hotel. Muzak agreed to install and lease to the hotel certain specified equipment. The hotel promised to pay therefor a rental of $600 per month for fifty-four months and the sum of $1 per month thereafter. In addition, the hotel agreed to pay as " a license fee for the use of such equipment " the sum of $100 per month. The contract was to continue for fifty-four months and thereafter until terminated by the hotel upon two months' notice. It was further provided that upon termination of the contract, the equipment was to be turned back by the hotel to Muzak.

In May, 1940, there remained unpaid twenty of the monthly payments or a total of $12,000. The original contract was modified to the extent that Muzak agreed to accept $10,200 *eo instanti* in lieu of the remaining payments of $600 per month, and cancellation of the payments thereafter of $1 per month. Muzak delivered to the hotel a bill of sale for the equipment. The agreement further provided that the hotel was to continue to pay the license fee of $100 per month. It was agreed that the original contract, except as modified or as inconsistent with the modifications, should remain in full force.

The hotel continued to pay the monthly license fee of $100 for some twelve years thereafter until in June, 1952, it notified Muzak that it was canceling the 1937 contract, as amended, and would pay no license fees after August 31, 1952. Subsequently, this action was brought to recover the accrued unpaid monthly license fees. Judgment was rendered in favor of the plaintiff in Municipal Court but upon appeal the judgment was reversed by the Appellate Term and the complaint dismissed.

The defendant contends that the modification of the contract in 1940 did not eliminate from the original contract the provision that it might terminate the agreement upon two months' notice, and, thereafter, it would no longer be liable for payment of the license fee. In other words, it insists, in substance, that immediately after the written modification was made on May 25, 1940,

expressly requiring it to continue to pay the monthly license fee of $100, it could have given notice that the contract was terminated as of July 25, 1940, even though it continued to use the equipment, and, thereafter, its liability for the license fee would have ended. Instead, it continued to make monthly license fee payments amounting to $14,750 over a period of twelve years before attempting to terminate the contract.

We construe the contracts as providing that the right of the hotel to terminate the agreement did not come into being until the end of the basic term of fifty-four months. Thereafter, the hotel was obligated to pay the license fee of $100 per month and had the right to terminate the contract upon two months' notice that it was no longer using the equipment. The modification agreement did not affect the termination provision in the original contract since there is no provision in the later agreement inconsistent with the termination provision of the first contract. The modification simply substituted a lesser lump sum payment for the total amount of the remaining monthly rental payments.

We search both agreements in vain for any agreement, express or implied, that the hotel could avoid paying the monthly license fee by serving only a notice of termination if it continued to use the equipment. The conduct of the defendant in continuing the annual payment of $1,200 for more than ten years after the end of the contract period makes it plain that it did not so construe the contracts. It seems clear that so long as the hotel continued to use the equipment, it was bound to pay the license fee. Its sole remaining right was to terminate the contract by giving up the use of the equipment.

It is unrealistic that we should adopt defendant's construction of the agreements in the light of its course of conduct. It is a well-recognized rule of interpretation of contracts that where uncertainty exists as to what a contract legally means, resort may be had to certain secondary rules. One of these is that '' The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court ''. (3 Williston on Contracts [Rev. ed.], § 623; Restatement, Contracts, § 235, subd. [e]; *Brooklyn Public Lib.* v. *City of New York,* 250 N. Y. 495; *Carthage Tissue Paper Mills* v. *Village of Carthage,* 200 N. Y. 1; *Woolsey* v. *Funke,* 121 N. Y. 87.)

Sufficient may be gleaned from the record — although the trial court erroneously precluded plaintiff from developing all the facts — to find that a substantial portion of the equipment consisted of switching panels, monitoring devices and other electronic apparatus protected by patents. The imposition of

the license fee, so long as the hotel continued to use the equipment, was not necessarily inconsistent with the fact of ownership if the license fee was, in effect, a royalty payment for the use of patents. A right to the use of a patented device may be severed from the right of ownership. (Cf. *Porter Needle Co.* v. *National Needle Co.*, 17 F. 536.)

The majority attempts to fortify its conclusion to the contrary by stating that " during the period from 1937 onward, defendant was subscribing to the Muzak Wired Program Service." What actually appears in the record is that the contract under consideration and the contract to furnish wired program service were separate and distinct instruments requiring independent payments. Indeed, upon the trial, not only were further facts concerning the contract for wired program service not developed but the trial court summarily foreclosed exploration of this subject. It was not the basis for the decision of the trial court or the determination of the Appellate Term. Such a theory is not even advanced in respondent's brief. A casual comment made in the course of the argument has been adopted by the majority in an attempt to explain the practical construction placed upon the contracts by the parties for a period of twelve years. It has always been understood that appeals should be disposed of on the same theory upon which the case was tried and decided and not upon a new theory developed upon oral argument of the appeal. (Cf. *Archer* v. *City of Mount Vernon*, 171 N. Y. 639; *Singer* v. *National Fire Ins. Co.*, 154 App. Div. 783, and *Oatka Cemetery Assn.* v. *Cazeau*, 242 App. Div. 415.)

The determination of the Appellate Term should be reversed and the judgment of Municipal Court affirmed.

COHN and CALLAHAN, JJ., concur with RABIN, J.; BASTOW, J., dissents in opinion in which PECK, P. J., concurs.

Determination affirmed, with costs.