HARRY W. LLOYD, Respondent, *v.* NORTH BRITISH AND MER-
CANTILE INSURANCE COMPANY OF LONDON AND EDINBURGH,
Appellant.

First Department, November 3, 1916.

Fire insurance — provisions of policy with respect to ownership and
incumbrance of property construed — when insured relieved from
obligation to serve proof of loss.

A provision of a fire insurance policy, with respect to ownership of the
property insured, relates to the quality of the title of the insured, and
not to questions of liens or incumbrances.

Although in construing the provisions of a standard fire insurance policy
the former rule of strict construction no longer obtains, yet the plain
provisions of the contract should not be extended by construction.

A provision of a fire insurance policy that it shall be void "if the subject
of insurance be personal property and be or become encumbered by a
chattel mortgage," should not be construed as embracing an equitable
lien or interest in the property.

A letter by a fire insurance company to an insured, constituting a definite
and unequivocal denial of liability under its policy, relieves the insured
from any obligation to comply with the provisions of the policy with
respect to proof of loss.

APPEAL by the defendant, North British and Mercantile
Insurance Company of London and Edinburgh, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the 5th
day of April, 1916, upon the verdict of a jury, and also from
an order entered in said clerk's office on the 6th day of April,
1916, in so far as it denied defendant's motion for a new trial
made upon the minutes.

*Leo Levy* [*Alex Davis* with him on the brief], for the
appellant.

*William G. Phlippeau*, for the respondent.

LAUGHLIN, J.:

This is an action on an insurance policy to recover for a fire
loss. The policy was issued by the defendant to the plaintiff
on the 6th day of February, 1913, and by its provisions the
defendant insured the plaintiff against loss by fire during the

ensuing year on a one-story frame building occupied as a boat building shop, at Yonkers, N. Y., and on the tools and machinery therein, and on a houseboat under construction therein. The property was destroyed by fire on the 27th day of September, 1913. The policy is not printed in full in the record, and from the extracts thereof printed it does not appear what the interest of the plaintiff in the property was stated to be in the policy. It was, however, provided that if his interest was not truly stated, the policy should be void, and that it should be void if his interest "be other than unconditional and sole ownership or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage." It was further provided therein that the plaintiff should give immediate notice in writing to the company of any loss by fire, and that within sixty days after the fire he should render a statement to the company, signed and sworn to by him, stating, among other things, "the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all encumbrances thereon." On the 3d day of October, 1913, the plaintiff delivered or transmitted to the company an unverified statement or schedule, which was received in evidence as Exhibit 5, and which contains numerous items of property under the heading, "Specifications of 40' Cabin Launch;" and other items under the heading "Boat Shop," but no valuations; and *numerous other items with valuation of each,* under the heading, "Inventory of Machinery and Tools of Harry W. Lloyd;" the total valuation of these items aggregating $173.70; but said statement contained no representation with respect to the ownership of the property, other than that quoted with respect to the machinery and tools, and no reference to a fire or loss. The evidence is conflicting with respect to the channel through which this statement was transmitted to the company; but it was stamped, "Received Oct. 3, 1913, N. B. & M. Ins. Co.," and was produced by defendant on the trial. The houseboat was being built by the plaintiff for A. J. Hambrecht, pursuant to an agreement in writing signed by the plaintiff and delivered to Hambrecht, under date of November 13, 1912, as follows: "I hereby agree to build for A. J. Hambrecht of 278

Hawthorne Av., Yonkers, N. Y., one house boat to be forty feet long and about twelve feet beam for the sum of one dollar and other compensation.   Should anything happen preventing the construction of said boat or prevent completion of said boat when under construction, all materials bought for said boat shall belong to A. J. Hambrecht, and, said Mr. Hambrecht shall own an interest in the boat shop located north of Yonkers Corinthian Yacht Club (80 ft.) amounting to the sum of all moneys paid to me above the actual cost of all materials bought for said boat.

"I acknowledge the receipt of one hundred dollars in two payments of fifty dollars to date."

The construction of the houseboat was commenced prior to the issuance of the policy, and it was nearly completed at the time of the fire; but was still in the possession of the plaintiff in his boat-building shop, and had not been delivered to Hambrecht.   Without returning or rejecting the informal statement which was delivered to the defendant by the plaintiff on the 3d day of October, 1913, as already stated, or referring thereto, the general adjuster of the defendant, Mr. Nichols, on the 16th day of October, 1913, wrote the plaintiff, as follows: "Referring to loss by fire of recent date to property described in Policy No. 2457663 issued to you by this Company, we desire to say that information comes to us to the effect that prior to the issue of our policy you ceased to be and never thereafter became the sole and unconditional owner of the property in said policy described.

"It is not the wish of this Company to act or refrain from acting on misinformation and if it appears to you that we have been misinformed, we shall be glad to be set right by you.

"Assuming, however, in the absence of information to the contrary, that the facts are as stated to us, we are taking no steps looking to an adjustment."

Thereupon the plaintiff employed one Freeman, an attorney, who called upon Nichols three or four days after the sixteenth of October; and according to his testimony, was informed by Nichols that the company had a sworn statement from a man who claimed to own part of the boat that was burned, and for

that reason "we decline to acknowledge any liability." Mr. Freeman says that after a brief conversation he left and reported "those facts" to the plaintiff. He then further testified that Nichols informed him that the plaintiff had not filed "a sufficient proof of loss," and said that the plaintiff had "sent down a paper in which he alleged a certain claim," and that the substance of Nichols' statement was that "he was not satisfied with the formality of the paper that he had," and that the company "denied any liability on account of this sworn statement;" but that the statement was not exhibited to him at that time. It appears that under date of September 30, 1913, Hambrecht wrote the company drawing attention to the policy and to the fact that there had been a total loss by fire, and notifying the company that he had "a lien or claim upon" the policy to the extent of $500, and requesting that the company retain that sum out of any moneys due to the plaintiff, and pay the same to him. Hambrecht also transmitted to the defendant a copy of the plaintiff's agreement with him for the construction of the houseboat. The company evidently wrote Hambrecht on the fourth of October requesting leave to inspect the original agreement, for on the sixth he wrote the company offering to permit such inspection. The evidence shows that some one representing the company called on him, but it does not expressly appear whether the original agreement was exhibited. There is no evidence that the defendant had any information with respect to Hambrecht's claim at the time it wrote the letter of October sixteenth other than Hambrecht's letter and the copy of plaintiff's agreement with him, and the testimony of Freeman to the effect that Nichols claimed at their first interview to have a sworn statement from Hambrecht, and that at their second interview such sworn statement was read to him. No information was given to the defendant with respect to the plaintiff's ownership of the property, and there were no further negotiations between the parties with respect thereto until long after the expiration of the period within which, by the terms of the policy, plaintiff was required to furnish sworn proof of loss; and there was no attempt by the plaintiff to furnish any further proof of loss until the twenty-

eighth day of January thereafter. In the meantime Freeman, representing the plaintiff, again called on Nichols some five or six weeks or more after their first interview, and at that time he says Nichols read to him a sworn statement of Hambrecht claiming that he owned part of the property, and showed him the said informal statement. Freeman also testified that at the second interview he informed Nichols that Hambrecht denied having claimed ownership in the property, and said: "If this is true I want to ask you, Mr. Nichols, to be kind enough to let us put in a formal proof of loss," to which Nichols replied ·that he would advise his company to do that if Freeman could satisfy him that the plaintiff "could get over the statement of the Commodore [Hambrecht]," and further said that he desired to see justice done, and that if Freeman could satisfy him that plaintiff "can get over the Commodore's statement I will ask the company," and that he did not know whether the company would do it, but that the company had always done what he asked, and finally said, "I will ask them if you think it can be done. You go home and think it over." Freeman also testified that he had been informed by Nichols that Hambrecht on September thirtieth "over his own signature in the paper drawn by his own lawyer and repeated again on October 26th had made claim under the agreement between himself and Lloyd for all of the insurance money." After the last interview between Freeman and Nichols the plaintiff employed Messrs. Chambers & Chambers, who were the attorneys for Hambrecht, and in his behalf had drafted a notice of claim which he made against the company, and applied to the company for blanks upon which to make formal proof of loss, and his application was denied, and thereupon he prepared and swore to a formal proof of loss on the 28th day of January, 1914, and his attorneys transmitted the same to the company; but that proof of loss contains no statement with respect to the ownership of the property. Under the same date the plaintiff wrote the defendant referring to the fire loss, and saying: "I desire to say that the information which you have received has misinformed you. I was at all times up to the time of the fire, the sole and unconditional owner of the property described in the policy." On the ninth

of February thereafter, Nichols, as general adjuster of the defendant, wrote Messrs. Chambers & Chambers acknowledging the receipt of the sworn statement of the plaintiff with respect to the fire loss, and his letter, and a communication from them, and stating that the papers had been referred to the company's attorney, to whom any communication in the matter should be addressed. This sworn statement was retained and produced on the trial by the attorney for the defendant, and no notice of its rejection for not having been presented in time, or for its insufficiency, was given to the plaintiff.

The learned trial court left it to the jury to determine whether or not the defendant's letter of October sixteenth in the light of the attending circumstances, was a denial of liability, and instructed them that if it was, it constituted a waiver of a compliance with the policy with respect to proof of loss, for the reason that the interest in the property claimed by Hambrecht did not affect the plaintiff's right of recovery; and at the request of the attorney for the defendant instructed them that if it was not a denial of liability there could be no recovery.

The evidence showed that prior to the fire Hambrecht had paid the plaintiff $500 on account of the construction of the houseboat. It is quite clear, I think, that notwithstanding the agreement between the plaintiff and Hambrecht for the construction of the houseboat, the plaintiff remained the unconditional and sole owner of the property within the provision of the policy on that subject. It is well settled that such a provision with respect to ownership relates to the quality of the title of the insured, and not to the question of liens or incumbrances. (*Browning* v. *Home Ins. Co.,* 71 N. Y. 508; *Wood* v. *American Fire Ins. Co.,* 149 id. 382; *Haight* v. *Continental Ins. Co.,* 92 id. 51. See, also, *American Artistic Gold Stamping Co.* v. *Glens Falls Ins. Co.,* 1 Misc. Rep. 114.) It is perfectly plain that no title to the boat-building shop, or to the material used or to be used in the construction of the houseboat, passed to Hambrecht under the agreement between him and the plaintiff; and, therefore, the plaintiff remained the owner of the property at the time the policy was issued. The only incumbrance which, by the terms of the policy, would

defeat the liability of the defendant was an incumbrance by chattel mortgage.   Although, doubtless in construing the provisions of a standard policy, the terms of which have been prescribed pursuant to act of the Legislature (Ins. Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 121, as amd. by Laws of 1909, chap. 240, and Laws of 1910, chaps. 168, 638, 668; since amd. by Laws of 1913, chap. 181), the former rule of strict construction (See *Baley* v. *Homestead Fire Ins. Co.*, 80 N. Y. 21) no longer obtains, yet the plain provisions of the contract should not be extended by construction.   The provisions with respect to an incumbrance by chattel mortgage relate to a title or interest created by a particular instrument, the nature and effect of which has often been declared by our courts as passing the legal title, leaving only an equity of redemption in the mortgagor (*Parshall* v. *Eggert*, 54 N. Y. 18; *Woodward* v. *Republic Fire Ins. Co.*, 32 Hun, 365); and, therefore, an incumbrance by chattel mortgage as used in the policy should not be construed as embracing an equitable lien or interest in the property, which at most is all that Hambrecht acquired.   (*Monongahela Ins. Co.* v. *Batson*, 163 S. W. Rep. [Ark.] 510; *Bonsey* v. *Amee*, 8 Pick. [Mass.] 236; Jones Chat. Mort. 13.)   It is not necessary to express an opinion with respect to the precise right or interest acquired by Hambrecht by virtue of his agreement with the plaintiff.   It is sufficient that such interest, whatever it was, did not constitute an incumbrance by chattel mortgage, within the purview of the policy.   There was some indefinite testimony given by Freeman with respect to a sworn statement by Hambrecht having been read to him; but Hambrecht was a witness upon the trial, and the effect of his testimony is that the only claim he made was under the agreement between him and the plaintiff, and a copy of that agreement was before the defendant's adjuster when he wrote the letter which is claimed to constitute a definite and unequivocal denial of liability if the facts were as represented to him.   Nichols was not called as a witness, and it must, therefore, be assumed that the only information the defendant had with respect to Hambrecht's claim was that which he made by the letter of September thirtieth, and which was based on the agreement between him and the plaintiff.

The plaintiff could not deny the making of that agreement, and that being so, the effect of the defendant's letter was, we think, to notify him that the defendant disclaimed liability on the policy, and would take no step looking to an adjustment of the loss. In that view, the letter constituted a definite and unequivocal denial of liability, which relieved the plaintiff from any obligation to comply with the provisions of the policy with respect to proof of loss. (*Flaherty* v. *Continental Ins. Co.*, 20 App. Div. 275; *Lang* v. *Eagle Fire Co.*, 12 id. 39; *Dobson* v. *Hartford Fire Ins. Co.*, 86 id. 115; *Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 108; *Chamberlain* v. *Insurance Co.*, 3 N. Y. Supp. 701; *Miles* v. *Casualty Co.*, 115 id. 1; affd., 136 App. Div. 908.) It is, therefore, unnecessary to consider whether there could be a recovery on the theory that the defendant should be deemed to have accepted the original statement delivered to it on the third of October as a sufficient proof of loss, or whether in the circumstances it could be held on the theory that it waived service of proof of loss within the period specified in the policy, and accepted the plaintiff's sworn statement of January 28, 1914, as a sufficient proof of loss.

It follows that the judgment and order should be affirmed, with costs.

CLARKE, P. J., SCOTT, SMITH and PAGE, JJ., concurred.

Judgment and order affirmed, with costs.