In the Matter of the COUNTY OF NASSAU, Relative to Acquiring Title to Real Property Required for Drainage at Gardiners Avenue, Levittown, Town of Hempstead, Nassau County.

Supreme Court, Special Term, Nassau County, August 26, 1954.

*Sydney Weisbarth* for Abe Tartasky, claimant.

*G. Burchard Smith, County Attorney,* for County of Nassau.

PETTE, J. This proceeding was instituted by the County of Nassau to acquire the fee title of a parcel of six acres, plus an easement in perpetuity over a strip of land 20 feet wide by 300 feet in depth. Pursuant to the direction of the Board of Supervisors, the Commissioner of Public Works prepared a map dated October, 1952, showing real property to be acquired in fee and for an easement in perpetuity for drainage and/or such other public purposes at Gardiners Avenue, Levittown, town of Hempstead, County of Nassau, New York, indicating the parcels of real property to be acquired, and the purported owners thereof. Said map was duly filed in the office of the County Clerk, April 7, 1953. Thereafter, the County Attorney gave notice on May 12, 1953, that he would move to condemn the property described on said map.

On May 25, 1953, an order was duly made and entered, which provided, among other things, that all claims be filed by claimants after due publication.

Claimant, Abe Tartasky, by his attorney, Sydney Weisbarth, Esq., served a notice of claim and filed same in the County Clerk's office, June 18, 1953.

This proceeding was duly noticed for trial, and by order of this court the matter was referred to an Official Referee for the October, 1953, Term to hear the issue of damage awards, and to report thereon.

The trial was held on October 28, 1953. On the trial, proof of title submitted in evidence by claimant Tartasky, showed that he acquired the entire 9.716 acres for $65,000 from Raymond Langdon and Alice E. Langdon by deed dated May 8, 1952, recorded in Nassau County Clerk's office May 13, 1952, in Liber 4866 of Deeds, page 258, section 51, block B. Expert testimony was submitted for both the claimant and the county.

Power to condemn property must be exercised in strict conformity with the statute conferring the right. (*Matter of Central Hudson Gas & Elec. Corp.* v. *Morgenthau,* 234 App. Div. 530, 533, affd. 259 N. Y. 569; *Matter of Water Comrs. of Amsterdam,* 96 N. Y. 351; *Schneider* v. *City of Rochester,* 160 N. Y. 165, 172.) Nichols on Eminent Domain (2d ed., Vol. I, § 19), states in part: "The power of eminent domain lies dormant until legislative action is had, pointing out the occasions, modes, agencies and conditions for its exercise." In *People* v. *Fisher* (98 Misc. 131, 140), the court stated: "It is elementary law

that where the property of an individual is to be divested by proceedings against his will there must not only be a strict compliance with all the provisions of the statute made for his protection and benefit, but the plain letter of the law must permit the action which it is proposed to take. In other words, in such cases the statutes must be strictly construed in favor of the owner of the property which it is sought to take."

Eminent domain is one of the sovereign powers inherent in the State as sovereign to take private property for public use. It is a reserved right or inextinguishable attribute of sovereignty exercisable by the State, or its authorized agent, to effect a public good whenever public necessity requires. The only limitation upon the exercise of the power is that the use must be public, compensation must be made, and due process of law observed. (*Secombe* v. *Milwaukee & St. Paul R. R. Co.,* 23 Wall. [U. S.] 108; *Matter of Fowler,* 53 N. Y. 60, 62.) The State Constitution does not create the power but recognizes its existence and merely regulates its use by designating limitations within which it may and beyond which it cannot be used. The power is exerted through the legislative branch alone. Subject to constitutional limitations, public use, due process, and the obligation of compensation, the State may take or resume property at will. (*People* v. *Adirondack Ry. Co.,* 160 N. Y. 225, 238, affd. 176 U. S. 335.) The legislative branch alone may determine the necessity and prescribe the method and extent of the taking.

The Official Referee, by his report dated November 18, 1953, made recommendations as to the amount of the awards, altered the acquisition maps and made his own map dimensions, made an award to the Town of Hempstead, which was not a party to the proceeding and never was made a party, and never appeared in the proceeding, or filed a proof of title or proof of damage.

Claimant served and filed his verified objections to the tentative report, which was granted *pro forma,* and the claimant now requests that the objections to the confirmation of the report of the Referee and to the tentative decree be determined on the merits, and urges alleged irregularities in the proceedings before said Referee, commission of errors on the trial, exclusion of certain relevant testimony, and inadequacy of the awards to the claimant, and that the proceedings be set aside, the report of the Official Referee vacated, and that the proceedings be remitted to Special Term of this court for trial *de novo.*

The reference herein was to hear and report only. It was not a reference to hear and determine; in the former instance the power of the referee is limited, and he cannot properly determine matters which are done in Special Term.

The language of section 11–22.0 of the Nassau County Administrative Code (L. 1939, ch. 272) is clear and unambiguous to the effect that the Nassau County Board of Supervisors is required to have a map setting forth the names of the owners of the parcels affected and the dimensions and bounds of each parcel. Despite the testimony of the county's expert, De Costerd, that the acquisition map used by him did not correctly set forth the correct dimensions of the property, and despite the fact that the county's expert engineer from the Department of Public Works testified that the acquisition map did not properly reflect the correct ownerships and dimensions, and that he was without authority " to add or take anything from " the map as adopted by the Board of Supervisors, the Official Referee, whose powers were limited by the order of reference, usurped the legislative power and function of the Board of Supervisors, improperly changed the map so as to have new ownerships, new dimensions and bounds set forth on the original acquisition map. This was done without the formality of a motion to change the map, or to have the ownerships and dimensions and bounds conform to any testimony. This was in direct violation of the Administrative Code empowering the Board of Supervisors to adopt a map. The act of the Referee was no part of the judicial function, but went to the very basis of a strictly legislative function. (*Purdy v. City of Newburgh*, 113 N. Y. S. 2d 376.)

Annexed to the tentative decree are two maps. The first is county's Exhibit 1 and is the original map as adopted by the Board of Supervisors pursuant to section 11–22.0 of the Code. It fails to show the required different ownerships or the proper dimensions and bounds as the property existed on March 30, 1953, the date the map was adopted by the board. Also annexed to the tentative decree is county's Exhibit 9, with lines in writing in red and green ink, which have been apparently added thereto. If the map adopted by the Board of Supervisors was defective, the Official Referee to hear and report had *no* power to correct said map. It is a matter of public record that a conveyance was made by the claimant to the Town of Hempstead in September, 1952, recorded in the Nassau County Clerk's office on November 21, 1952, in Liber 5054 of Deeds at page 247, which was five months before the Board of Supervisors adopted the incorrect map. It was error to proceed with the trial in view of the testi-

mony that the acquisition map was incorrect and not in accordance with the provisions of section 11–22.0 of the Nassau County Administrative Code.

Further error was committed on the trial in the exclusion of the testimony of William Murphey, called by the claimant as a hostile witness, having been served with a subpœna. There was no basis for sustaining the objection on the grounds of alleged privileged communication between himself and the county. The weight and credibility of this witness could have been properly judged by the Official Referee. In a community under a system of representative government and removable officials, there can be no facts which require to be kept secret with that solidity which defies the inquiries of a court of justice. (Wigmore on Evidence, § 2378a, pp. 789, 790.)

Any statute declaring in general terms that official records are confidential, should be liberally construed to have an implied exception for disclosures when made in a court of justice. (Wigmore on Evidence, § 2379, p. 801.) '' Any citizen, no matter how humble his rank or position in life may be, has the unqualified right to invoke full judicial power and process, not only as his shield but also as his sword against oppression. To give him less would be a denial of justice.'' (*People* v. *Walsh*, 262 N. Y. 140; *Matter of Gaffney* v. *Kampf*, 182 Misc. 665, 670.) The prevailing view seems to be that as expressed by Judge HAND in *United States* v. *Andolschek* (142 F. 2d 503), in reference to criminal cases: If the Government chooses to commence a civil action it stands in the position of a private litigant and it waives any privilege against disclosures that it might possess by reason of a valid departmental regulation if it were not a party to the litigation. (*Bowles* v. *Ackerman*, 4 F. R. D. 260; *Fleming* v. *Bernardi*, 4 F. R. D. 270.)

In view of the foregoing, the court feels constrained to deny the motion to confirm the tentative decree, and directs that this proceeding be remitted to Special Term for a rehearing. Settle order on notice.