INDEPENDENT PRODUCTIONS CORPORATION and IPC Distributors, Inc., Plaintiffs,

v.

LOEW'S, INCORPORATED et al., Defendants.

United States District Court
S. D. New York.
May 29, 1958.

Rosston, Hort & Brussel, New York City, George Brussel, Jr., Eugene G. King, New York City, of counsel, for plaintiff Independent Productions Corp.

George Brussel, Jr., New York City, George Brussel, Jr., Eugene G. King, New York City, of counsel, for plaintiff IPC Distributors, Inc.

Louis Phillips, New York City, for defendants Paramount Pictures Corp., Paramount International Films and Paramount Film Distributing Corp.

Sidney Schreiber, New York City, for defendants Motion Picture Ass'n of America, Inc. and Association of Motion Picture Producers.

Benjamin Melniker, New York City, for defendants Loew's Incorporated and Loew's International Corporation.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendants Twentieth Century Fox Film Corporation, Twentieth Century Fox International Corporation and Twentieth Century Fox Inter-America, Inc.

Robert W. Perkins, New York City, for defendants Warner Bros. Pictures, Inc., Warner Bros. Pictures International Corporation and Warner Bros. Pictures Distributing Corp.

Cahill, Gordon, Reindel & Ohl, New York City, for defendant Radio Corporation of America.

Spivak & Kantor, New York City, for defendants Richard S. Walsh and John J. Francoville.

Michael F. Mayer, New York City, for defendant Arthur Mayer.

Adolph Schimel, New York City, for defendants Universal Pictures Company, Inc., Universal Film Exchanges, Inc. and Universal International Films, Inc.

Schwartz & Frohlich, New York City, Myles J. Lane, New York City, of counsel, for defendants Columbia Pictures Corporation and Columbia Pictures International Corporation.

HERLANDS, District Judge.

This is a private treble damage antitrust action by two corporate plaintiffs against one hundred and eight corporate and individual defendants engaged in various branches of the motion picture industry. Damages of $7,500,000 are sought in addition to the injunctive relief.

The gravamen of the action, commenced in September 1956, is that defendants have conspired to prevent and interfere with the production, distribution and exhibition of a film, "Salt of

the Earth," produced and distributed by the two plaintiff corporations, Independent Productions Corporation and IPC Distributors, Inc. Defendants' answers are, in substance, a general denial of the charges.

On May 22, 1957, defendants commenced a pre-trial examination of Simon M. Lazarus, president and sole stockholder of plaintiff-Independent Productions Corporation and president of plaintiff-IPC Distributors, Inc. The Lazarus deposition was taken for five days and then adjourned on May 29, 1957. In the course of the examination, Lazarus refused to answer ninety-five questions or groups of questions.

Those questions may be classified, for purpose of analysis, into two categories. The *first* category relates to Lazarus' possible connections and beliefs of a subversive character. The pertinent questions concern Lazarus' association with and participation in the Communist Party and other subversive organizations; and his subscription to and reading of so-called subversive books and periodicals. The *second* category relates to the reasons for and truthfulness of Lazarus's having invoked the Fifth Amendment in refusing to answer questions put to him in 1953 by the House Committee on Un-American Activities. The pertinent questions revolve around the fact that, during the current pre-trial examination, Lazarus has answered the very questions that he had previously refused to answer when he appeared before the House Committee.

The refusal to answer questions in the first category is based upon the following grounds:

"The question is objected to and the witness directed not to answer upon the ground that the information it seeks to elicit is neither relevant nor material to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence; and upon the further ground that the question would require the disclosure of political beliefs and opinions of the witness and the identity of his political associates and associations in respect of which defendants' counsel are not privileged to inquire and which the witness is not required to disclose, under the First Amendment to the Constitution of the United States." Affidavit of George Brussel, Jr., dated September 25, 1957, p. 5, and Appendix "A," p. 1; Affidavit of Myles J. Lane, dated September 24, 1957, Schedule "A," pp. 2–3.

The refusal to answer questions in the second category is based upon the following grounds:

A. The First Amendment (Affidavit of Myles J. Lane, dated September 24, 1957, Schedule "A," p. 16);

B. Relevancy (Affidavit of Myles J. Lane, dated September 24, 1957, Schedule "A," pp. 16, 17, 21, 22, and 24); and

C. "Mr. Brussel (plaintiffs' attorney): I would like the record to reflect that with respect to the other questions you put to this witness concerning his testimony before the House Committee that we have neither asserted nor waived any constitutional privileges or immunities that we might have with respect to the other questions." Affidavit of Myles J. Lane, dated September 24, 1957, Schedule "A," pp. 18, 21, 24 and 32.

Defendants move, pursuant to Fed. Rules Civ.Proc., Rule 37(a), 28 U.S.C.A., for an order compelling Lazarus, as president of the plaintiff-corporations, to answer the questions listed in Schedule "A," attached to the Myles J. Lane affidavit of September 24, 1957.

Plaintiffs cross-move, pursuant to F. R.C.P., Rule 30(b), for an order sustaining plaintiffs' objections to those questions and directing defendants not to inquire into the subject-matter of those questions.

Upon the oral argument, the parties disposed of a controversy relating to the

production of Lazarus' personal income tax returns.

## I. Relevance

■ F.R.C.P., Rule 26(b), authorizes examination of a witness "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Under this rule, the courts have permitted broad discovery. Any question that is in any way relevant to the subject-matter of the litigation is proper. Rose v. Bourne, Inc., D.C.S.D. N.Y.1953, 15 F.R.D. 362, 363; Laurens Mills v. John J. Ryan & Sons, Inc., D.C. S.D.N.Y.1953, 14 F.R.D. 191; Mills Music Inc. v. Cromwell Music Inc., D.C.S.D. N.Y.1953, 14 F.R.D. 411; Kaiser-Frazer Corp. v. Otis & Co., D.C.S.D.N.Y.1951, 11 F.R.D. 50; 4 Moore, Federal Practice, para. 26.16 (2d Ed. 1950).

■ Equally axiomatic are the propositions that it is no ground for objection that the testimony may be inadmissible at the trial [Rule 26(b); Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469]; and that discovery will be allowed unless the information sought is clearly irrelevant. Laurens Mills v. John J. Ryan & Sons, Inc., D.C.S.D.N. Y.1953, 14 F.R.D. 191.

■ While purely collateral points are not subject to discovery [Vilastor Kent Theatre Corp. v. Brandt, D.C.S.D.N.Y. 1955, 18 F.R.D. 199; 4 Moore, Federal Practice, para. 26.16 (2d Ed. 1950)], discovery is proper on the issue of the credibility of the witness. 4 Moore, Federal Practice, para. 26.16 (2d Ed. 1950).

■ Objections based on alleged irrelevancy must, therefore, be viewed in the light of the broad and liberal discovery principle consciously built into the Federal Rules of Civil Procedure.

*Questions in the First Category*

■ As noted, the questions in the first category relate to Lazarus' political beliefs, associations and associates. The plaintiffs have charged the defendants with a conspiracy in restraint of trade.

One line of defense open to defendants would involve proof that the several defendants' actions were individual and not conspiratorial. One method of proving this individuality of action is to demonstrate that such action on the part of a particular defendant was reasonably prompted and motivated by a condition which he had good and sufficient reason to believe existed. In order to show that he was both reasonable and sincere in believing that the condition existed, it is permissible to show that the situation did in fact exist.

■ That the reasonableness and good faith of a defendant's actions are relevant to proof of individual, as distinguished from conspiratorial, activity is a firmly established rule of evidence. Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 1954, 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273; Fanchon & Marco v. Paramount Pictures Inc., D.C.S.D.Cal.1951, 100 F.Supp. 84, affirmed, 9 Cir., 1954, 215 F.2d 167 ("no parallelism, conscious or unconscious, can overcome a finding of reasonableness"); United States v. Twentieth Century-Fox Film Corporation, D.C.S.D.Cal.1955, 137 F.Supp. 78.

■ All of the questions within the first category are designed to disprove a conspiracy and *per contra* to prove that genuine and proper business reasons motivated individual conduct on the part of the individual defendants. Keeping in mind the uniqueness of the motion picture business as entertainment and its unavoidable sensitivity to public criticism, the Court clearly perceives that the challenged questions relate directly to matters that bear upon an individual defendant's decision to do or not to do business with the plaintiffs. Cf. Scott v. RKO Radio Pictures Inc., 9 Cir., 1957, 240 F.2d 87; Twentieth Century-Fox Film Corporation v. Lardner, 9 Cir., 1954, 216 F.2d 844, 51 A.L.R.2d 728; Loew's Inc. v. Cole, 9 Cir., 1950, 185 F. 2d 641.

■ Plaintiffs argue that the specific factual data sought by defendants was not known to the public or to the motion picture industry; and that, therefore, evidence of such facts could not support a defense of reasonableness. Assuming *arguendo* that plaintiffs' factual premise is correct, the Court is nevertheless of the opinion that defendants should be permitted to show the true state of affairs in order to demonstrate that their belief was reasonable. A jury may find that, if a defendant believes a condition to exist and that the condition does exist, the defendant's belief was reasonable.

■ The questions are also relevant to the issue of damages and causation of damages. For example, it is possible that the political views and associations of plaintiffs' officers and employees may have cause "Salt of the Earth" to have been rejected by the public at the box-office. That possible rejection may be attributable to such factors as the public's distaste for plaintiffs' officers and employees or for the alleged propaganda contained in the film.

Nothing said in this opinion constitutes a holding as to the admissibility of evidence upon the trial. The foregoing views concern the matter of relevance for purposes of a pre-trial deposition.

Plaintiffs also argue that the questions were asked only to demonstrate tortious or illegal conduct on the part of plaintiffs and its officers, and that plaintiffs' conduct of that character is not a legal defense in a private antitrust action because the policy of the Antitrust Laws is to protect the public. Fashion Originators' Guild of America, Inc., v. F. T. C., 1941, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 1951, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219.

It is sufficient to point out that in both of the cited cases, the Court had first found that there was a conspiracy.

In the case at bar, the evidence sought to be elicited by the questions bears upon the primary issue whether there was a conspiracy and whether the alleged damages were caused by defendants.

Moreover, under certain circumstances, the courts do inquire into the reasons for the allegedly concerted action in relation to its effect on the particular industry. See Union Circulation Company, Inc., v. Federal Trade Commission, 2 Cir., 1957, 241 F.2d 652; Ruddy Brook Clothes, Inc. v. British & Foreign Marine Ins. Co., 7 Cir., 1952, 195 F.2d 86; United States v. National Football League, D.C.E.D.Pa.1953, 116 F.Supp. 319. Cf. United States v. E. I. Du Pont De Nemours & Co., 1956, 351 U.S. 377, 387, 76 S.Ct. 994, 100 L.Ed. 1264.

The Court concludes that the matters embraced within the questions in the first category are relevant.

*Questions in the Second Category*

The questions in the second category, as already noted, relate to the reasons why Lazarus invoked the Fifth Amendment testimonial privilege before the House Committee on Un-American Activities in 1953. The Court regards the questions in this category as relevant to the subject-matter of the litigation. If the answers to those questions could have tended to incriminate Lazarus in 1953, i. e., the plea was properly taken, then defendants are entitled to know now what criminality could have possibly attached to the answers then withheld by Lazarus.

■ The sought-for information should be supplied for two reasons. First, the facts of possible criminality attaching to plaintiffs or their officers would tend to support the defense of denial of a conspiracy by showing that defendants acted reasonably and had sound business motives. With respect to the issues raised by that defense, the possible criminality of the plaintiff-corporations and their ranking personnel is a point of legitimate inquiry.

■ Furthermore, such criminal acts as may be proved would be pertinent to the issue of credibility; and hence would be a proper subject of discovery.

■ Secondly, if the Fifth Amendment privilege had been asserted without justification, that fact may have an impact on the question of Lazarus' present credibility as a witness in this case.

Plaintiffs contend that acts of misconduct, not resulting in conviction for a crime, are not the proper subject of cross-examination for purposes of impeachment and that, consequently, they are not relevant in pre-trial discovery. In support of their position, plaintiffs cite Little v. United States, 8 Cir., 1937, 93 F.2d 401; United States v. Provoo, 2 Cir., 1954, 215 F.2d 531 and the cases cited in the Provoo case at page 536, note 6. The cited decisions do not control the case at bar, because they were Federal *criminal* cases (and one District of Columbia civil case), in which the Federal courts use their own rules of evidence. See Federal Rules Cr.Proc., Rule 26, 18 U.S.C.A.

■ Without attempting to define the rule applicable in a Federal *criminal* case as to the scope of cross-examination concerning the witness's prior refusal to answer questions on constitutional grounds [Grunewald v. United States, 353 U.S. 391, 418–421, 426, 77 S.Ct. 963, 1 L.Ed.2d 931], this Court is of the opinion that in *civil* cases the Federal courts may use "the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held." F.R.C.P., Rule 43. Such evidence is admissible to impeach credibility in the New York courts. See People v. Sorge, 1950, 301 N.Y. 198, 93 N.E.2d 637; People v. Webster, 1893, 139 N.Y. 73, 34 N.E. 730; People v. Giblin, 1889, 115 N.Y. 196, 21 N.E. 1062, 4 L.R.A. 757; Shepard v. Parker, 1867, 36 N.Y. 517; McQuage v. City of New York, 1st Dept. 1954, 285 App.Div. 249, 136 N.Y.S.2d 111; Batease v. Dion,

3d Dept. 1949, 275 App.Div. 451, 90 N. Y.S.2d 851; People v. Flynn, 1st Dept. 1949, 275 App.Div. 350, 89 N.Y.S.2d 28; McCormick, Evidence, 86–89 (1954); Holtzoff, Institute on Practical Evidence, 18 F.R.D. 367, 375.

It may develop that the answers to these questions have little probative value with respect to either of these points. For example, it is suggested in plaintiffs' brief (pp. 33–34) that Lazarus may have invoked the Fifth Amendment because he believed that the Congressional Committee had reached the conclusion that Independent Productions Corporation was under the control of the Communist Party and that it was being used for illegal activities; and that, therefore, association with such an enterprise was or could be incriminating. Lazarus may now feel that such a belief is no longer justified and that, therefore, the danger of incrimination for such association has passed. If this hypothesis be true, the defendants may be embarking upon a fruitless line of questioning. At the present stage of proceedings, the Court deems the questions relevant to the subject-matter of the litigation for purposes of discovery.

## II. First Amendment Privilege

Plaintiffs argue that their president, Lazarus, may refuse to answer questions because the answers to the first category of questions are privileged by virtue of the First Amendment. Defendants deny the existence of a First Amendment *testimonial* privilege and also contend that, if *arguendo* Lazarus had such a privilege, it was waived by plaintiffs' instituting this action.

### The Existence of a First Amendment Testimonial Privilege

Plaintiffs' position is unique. They claim that a witness—who is the president and sole stockholder of one plaintiff-corporation and the president of the other, and who is being called to testify in his capacity as president of these plaintiff-corporations—may assert a tes-

timonial privilege based on the First Amendment, thereby preventing defendants from obtaining certain facts which are relevant to their defense.

Plaintiffs rely principally on Sweezy v. New Hampshire, 1957, 354 U.S. 234, 77 S.Ct. 1203, 1204, 1 L.Ed.2d 1311. In Sweezy, the petitioner was being investigated by a duly created legislative committee (consisting only of the state attorney general), pursuant to a New Hampshire statute regulating subversive activities. The state attorney general, by joint resolution of the state legislature, had been given the power to investigate subversive activities and persons and was "authorized to act upon his own motion and upon such information as in his judgment may be reasonable or reliable."

Petitioner refused to answer questions put to him by the "legislative committee" about the subject-matter of a particular lecture he had given; his association with the Progressive Party; others who he knew were associated with the Progressive Party; and his belief in Communism. Petitioner based his refusal on, *inter alia*, his First Amendment rights. The state courts ordered him to answer the questions. Petitioner continued in his refusal and was held in contempt by the state courts. On certiorari to the United States Supreme Court, the highest state court decision was reversed. 100 N.H. 103, 121 A.2d 783.

The opinion of Chief Justice Warren (representing the position of four of the Justices) held that there was no state interest underlying these questions and that, therefore, the questions violated the petitioner's First Amendment rights as applied through the Fourteenth Amendment. The Chief Justice reasoned that the state legislature was under a duty to see that its investigations proceeded in a manner that would not violate the constitutional rights of witnesses. Questions relating to a witness' political and economic beliefs violated

his constitutional rights when asked publicly by some one acting as a legislative committee; except, perhaps, if there were an overriding state interest. But, because broad powers and discretion were lodged in the attorney general, the Supreme Court found that it was not clear that the questions were questions that the state legislature desired to be pursued; and, hence, there was nothing connecting these questions with an underlying "fundamental state interest." Since the Supreme Court did not know whether or not the questions were related to any "fundamental state interest," the Supreme Court treated the attorney general as having acted without authority. Such questioning, the Court concluded, in view of the lack of any fundamental state interest, violated the due process requirements of the Fourteenth Amendment.

Mr. Justices Frankfurter and Harlan (concurring in result) held that the questions did relate to an underlying state interest, as determined by the state courts; but that, on balance, the individual's rights outweighed the state's rights and interests under the circumstances; and that the questions violated the individual's First Amendment rights, as applied through the due process clause of the Fourteenth Amendment. Mr. Justices Clark and Burton dissented. Mr. Justice Whittaker took no part in the consideration or decision of the case.

Defendants rely on American Communications Ass'n C.I.O. v. Douds, 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, to support their position that there is no testimonial privilege under the First Amendment. The issue in Douds, was the constitutionality of § 9(h) of the Taft-Hartley Act, 29 U.S.C.A. § 159(h), requiring the filing of non-Communist affidavits by union officers in order that a union be entitled to certain rights under the Act. The Supreme Court held that the section was a reasonable regulation of interstate commerce, in that it was an effort to keep Commu-

nists out of union offices and thereby prevent political strikes. The Supreme Court found that the statute did not run the danger of forcing people to abandon political beliefs, nor did it punish one for his beliefs, nor was it aimed at the prevention of the dissemination of ideas. Furthermore, the union, being given powers it did not have before the enactment of the statute, was subject to some regulation. The Court concluded that the effect on "First Amendment freedoms is relatively small and the public interest to be protected is substantial." 339 U.S. at page 397, 70 S.Ct. at page 683. See United Public Workers of America (C.I.O.) v. Mitchell, 1947, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754.

Both Sweezy and Douds deal with governmental (state or Federal) regulation and control of private activities, opinions or speech by one method or another. See Sweezy v. New Hampshire, 354 U.S. 234, at page 250, 77 S.Ct. 1203; American Communications Ass'n C.I.O. v. Douds, 339 U.S. 382, at pages 390–391, 399, 400, 70 S.Ct. 674. In fact, all of the First Amendment cases deal with efforts on the part of either the Federal or state Government to regulate, control or channel speech or political thinking. E. g., Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (state censorship of motion pictures); Terminiello v. Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (state control over public speeches); Stromberg v. California, 1931, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (state control over the display of a red flag). See Dowling, Cases on Constitutional Law, 879–1058 (1954).

This Court is not convinced that such First Amendment rights become testimonial privileges of silence when applied to private litigation.

The purpose of the First Amendment is to prevent oppression and censorship by the Government of the rights of individuals. That Amendment protects the right to express one's views. It does not relate to the privilege of silence. The essential purpose of the First Amendment is not violated by requiring the plaintiffs in private litigation to testify about political beliefs and activities when those beliefs and activities are directly relevant to the issues in the case. See 8 Wigmore, Evidence, section 2214.

The personal privilege of silence granted by the Fifth Amendment is a shield against compulsory self-incrimination through testimony in all proceedings, civil and criminal.

On the other hand, the First Amendment, expressed in terms as a limitation on the law-making power of Congress, is designed to safeguard Free Speech, not testimonial silence.

In Sweezy, the Supreme Court was concerned with the effect of compelling an answer to a question, in the factual context of that particular case. See 354 U.S. at page 248, 77 S.Ct. 1203. The Supreme Court felt that words freighted with the burden of future accountability to a public authority are restrained words and not Free Speech.

Here, the plaintiffs—through their president, Lazarus—are not being called on to explain Lazarus's speech but his refusal to speak. Plaintiffs are simply being required to answer certain relevant questions in pre-trial discovery in a civil lawsuit. At this time, the Court is not required to decide what punishment can constitutionally be imposed should Lazarus persist in refusing to answer. See F.R.C.P., Rule 37(b) (2), for possible consequences.

To the interpretative reasons already advanced, must be added the Court's disinclination to create either a new privilege by circuitous implication or to extend the First Amendment by strained logic. This disinclination flows from considerations of policy expounded by Wigmore:

> "[W]e start with the primary assumption that there is a general

duty to give what testimony one is capable of giving, and that any exceptions which may exist are distinctly exceptional, being so many derogations from a positive general rule: * * * [T]he sacrifice may be of his [the witness's] privacy, of the knowledge which he would preferably keep to himself because of the disagreeable consequences of disclosure. This inconvenience which he may suffer, in consequence of his testimony, by way of enmity or disgrace or ridicule or other disfavoring action of fellow-members of the community, is also a contribution which he makes of executing justice * * *." 8 Wigmore, Evidence, section 2192, 3d Ed., at pp. 64–66. See United States v. Bryan, 1950, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 quoting Wigmore's view with approval.

 The Court concludes that in civil litigation—where criminal penalties, censorship or abridgement of speech are not involved—there is no testimonial privilege of silence based on the First Amendment.

*Waiver*

If it be assumed *arguendo* that there is a testimonial privilege based on the First Amendment, the Court would nevertheless be compelled to find a waiver of that privilege under the circumstances of this case.

It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.

Plain justice dictates the view that, regardless of plaintiffs' intention, plaintiffs must be deemed to have waived their assumed privilege by bringing this action. Moore, Federal Rules and Official Forms, 164 (1956). Professor Moore has pointedly observed:

"Now, what about privileges in private litigation? Some, such as the attorney-client privilege, could not normally be held to be waived by bringing or defending a suit, for in the attorney-client situation the privilege is designed to promote confidential relations that may well deal with the very suit in question. But assume that plaintiff seeks to replevy some bonds and his title is the basic issue; and to a properly framed and relevant question concerning ownership he refuses to answer on the ground that his answer might tend to incriminate him. While it would be reasonable not to compel a disclosure and thus respect his claim to that extent, does fairness not demand that plaintiff's action be stayed, for a reasonable time, to permit him to change his mind and, in the absence of a change, to dismiss his action? In the converse situation if the defendant invokes the privilege, does fairness not demand that plaintiff's claim of title be taken as admitted?

"Would it make any difference that the privilege was claimed in connection with an affirmative defense? Thus assume that plaintiff sues on the alleged slanderous statement that defendant had called him a Communist; the defendant pleads truth as an affirmative defense; and on the taking of plaintiff's deposition plaintiff pleads his privilege against incrimination to a properly framed and relevant question as to plaintiff being a Communist. Does not fairness demand that defendant's affirmative defense be taken as true for the purpose of the action?

"We believe that the above questions should be answered affirmatively on the theory that such a privilege is 'waived'—though the party intended no waiver—by bringing or defending the suit to the extent and

under the circumstances stated above."

This view strikes home. Plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action, they would not have been called on to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this asserted privilege as both a sword and a shield. Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege.

■ The Court therefore rules that these plaintiffs have waived whatever privilege they may have had by the bringing of this action.

This ruling is supported not only by Wigmore (8 Wigmore, Evidence, section 2272 [3d Ed. 1957, Pocket Supplement]) but also by such analogous decisions as Franklin v. Franklin, 1955, 365 Mo. 442, 283 S.W.2d 483; Annest v. Annest, 1956, 49 Wash.2d 62, 298 P. 483; and Levine v. Bornstein, Sup.Ct., Kings Co. 1958, 174 N.Y.S.2d 574.

In Franklin, plaintiff, suing for a divorce, refused to answer certain interrogatories relating to the status of her prior marriage on the ground of self-incrimination. The court held that such a refusal justified striking plaintiff's pleadings. In Annest, the court struck the testimony of the respondent because she refused to answer questions on the ground of self-incrimination. In Levine, the court struck out the complaint and dismissed the action where the plaintiff refused to answer questions at an examination before trial on the ground of the Fifth Amendment.

There is additional support for this view in still other authorities. In criminal cases, the prosecution may not withhold evidence relevant to the defense on such grounds as governmental secrets or official privilege. The oft-quoted words of Judge Learned Hand, uttered in United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503, 506, are apposite:

"The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully."

■ The Andolschek doctrine has been said by the Court of Appeals of the Second Circuit to apply "in civil as well as in criminal cases." Walling v. Twyeffort, Inc., 2 Cir., 1947, 158 F.2d 944, 948. For example, where the Government is a party-plaintiff in civil litigation, the courts have overruled the Government's refusal to supply information on the ground of privilege. Fleming v. Bernardi, D.C.N.D.Ohio 1941, 1 F.R.D. 624; Brewer v. Hassett, D.C.Mass.1942, 2 F.R.D. 222; Bowles v. Ackerman, D.C. S.D.N.Y.1945, 4 F.R.D. 260; In re Gardiners Avenue, Levittown, 1954, 207 Misc. 190, 136 N.Y.S.2d 166. In Fleming v. Bernardi, supra, the rule was stated as follows [1 F.R.D. 625]:

"It seems that when a party seeks relief in a court of law, he must be held to have waived any privilege, which he otherwise might have had, to withhold testimony required by the rules of pleading or evidence as a basis for such relief. * * * He must either give up his privilege to withhold pertinent evidence or he must abandon his suit for relief."

The logic and policy that have compelled the courts to decide that the Government waived its privilege by instituting an action, apply with equal force to this private litigation, where the plaintiffs seek to thwart the defendants by invoking a privilege to justify a refusal to answer pre-trial questions.

■ Mr. Lazarus has been called as president of both plaintiff-corporations. He is the sole stockholder of one of the plaintiff-corporations; he is the prime mover of both corporations; and he

recommended and approved this lawsuit. His refusal to answer is the plaintiff-corporations' refusal.

Plaintiffs further argue that the effect of directing Lazarus to answer the questions in the first category would be to convert this antitrust action into a trial of the political beliefs and associations of the officers of the plaintiff-corporations. Upon the foregoing premise, plaintiffs request the court not to order Lazarus to answer the questions. Plaintiffs cite Berra v. United States, 8 Cir., 1955, 221 F.2d 590; Sanders v. Glenshaw Glass Co., Inc., 3 Cir., 1953, 204 F. 2d 436; Loew's Inc. v. Cole, 9 Cir., 1950, 185 F.2d 641.

The cases are inapplicable because they dealt with the admissibility of evidence upon the trial.

This Court is not now adjudicating admissibility of any evidence upon the trial. See F.R.C.P., Rule 26(e):

> " * * * objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying."

██ In closing this discussion of the First Amendment, it is well to remember that in the interpretation of Free Speech, there are no absolutes. The process of interpreting the First Amendment actually involves a reasoned appraisal of conflicting values and a conscious effort to make an intelligent and impartial choice. Learned Hand, The Bill of Rights (1958), pp. 60–66.

In assessing the factors that enter into such appraisal and choice in this case, the Court has been impressed by these features:

1. The parties asserting the First Amendment privilege are the plaintiffs and not the defendants.

2. The action is civil and not criminal.

3. The proceeding in which the privilege is being asserted is pre-trial discovery and not the trial itself.

### III. Fifth Amendment

Plaintiffs claim that the questions in the second category call for answers that are privileged under the Fifth Amendment, and thus need not be answered. F.R.C.P., Rule 26(b). Plaintiffs' chief reliance is on the rationale of Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931. Thus, plaintiffs argue (1) that, because Lazarus in 1953 invoked the Fifth Amendment before the House Committee, forcing him now to reveal what criminality may have attached to such answers in 1953— whether or not he actually would have been incriminated in 1953 and whether or not the answers he would now give are incriminating—violates Lazarus' constitutional rights; (2) that Lazarus's prior invocation of the Fifth Amendment is not inconsistent with his present position of answering questions and, therefore, his past refusal does not bear upon his credibility; and (3) that Lazarus's use of the Fifth Amendment in 1953 ought not now be used against him, because to do so would tend to destroy the effectiveness of his Fifth Amendment privilege.

██ Plaintiffs did not raise the Fifth Amendment privilege as an objection. At the taking of the Lazarus deposition, plaintiffs did, however, reserve any other constitutional privileges and immunities that Lazarus might have. Such constitutional rights are not waived merely by the taking of a deposition. See F.R. C.P., Rules 26(e) and 32(c).

Defendants argue that the failure specifically to invoke the Fifth Amendment privilege waives it [citing United States v. Monia, 1943, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376; Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344]; and that the objection based on the Fifth Amendment is not properly before the Court because, at

the taking of the deposition, plaintiffs failed to assert that objection and the grounds of the objection.

The Court has already decided that the questions are relevant. The Court will consider the Fifth Amendment objections at this time rather than send the parties back for the purpose of making a formal objection on the record.

The Grunewald case is fundamentally different from the present one. Grunewald involved the cross-examination of a defendant (Halperin) in front of a trial jury in a criminal case. Defendant Halperin took the stand as a witness in his own behalf at the trial and was cross-examined by the prosecutor with respect to his having claimed his Fifth Amendment privilege when he had appeared before the Grand Jury.

The case at bar is basically distinguishable from Grunewald on the following grounds: (1) the witness (Lazarus) is not testifying before a trial jury or trial judge but is being examined at a pre-trial discovery proceeding; (2) the questions and answers may or may not be admissible upon the trial; (3) the witness admitted, without objection, that he had refused to answer the questions before the House Un-American Activities Committee in 1953 on the basis of his Fifth Amendment privilege; and (4) the witness is testifying as the party-plaintiff in a civil case, not as a defendant in a criminal case.

■ The questions now posed do not violate Lazarus's Fifth Amendment rights unless the answers presently tend to incriminate him. Such incrimination has not been claimed.

■ Finally, for the same reasons presented in discussing the waiver of the First Amendment privilege, the Court is of the opinion that plaintiffs must be deemed to have waived whatever Fifth Amendment privilege may have existed before this lawsuit was commenced.

### IV. Plaintiffs' Cross-Motions

■ So far as concerns matters other than the listed questions actually propounded to Mr. Lazarus, plaintiffs' motion to limit the scope of defendants' examination [F.R.C.P., Rule 30(b)] is premature. Any claim of privilege or irrelevancy should be raised by plaintiffs' objection to specific questions when asked. The Court will not, in advance, pass upon anticipated questions. See Jacobowitz v. Kremer, D.C.S.D.N.Y.1946, 7 F.R.D. 110; Smith v. Crown Publishers, Inc., D.C.S.D.N.Y.1953, 14 F.R.D. 514; Brockway Glass Co., Inc. v. Hartford-Empire Co., D.C.W.D.N.Y.1941, 36 F.Supp. 470; 4 Moore, Federal Practice, para. 30.09 (2d Ed. 1950).

Plaintiffs' cross-motion to sustain the objections to the listed questions is denied for the same reasons that the Court has granted defendants' motion to compel plaintiffs' president to answer said questions. Defendants' motion is granted. Plaintiffs' cross-motion is denied. However, the Court sustains plaintiffs' objections based upon the form of the question with respect to the questions numbered 48, 65, 66 and 73, as set forth in Appendix "A" attached to the affidavit of Myles J. Lane.

Settled order on notice within seven days from the date hereof.