**FOREIGN CREDIT CORPORATION,**
**Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY et al. and Export-Import Bank of Washington, Defendants.**

**No. 64 Civ. 3681.**

United States District Court
S. D. New York.
June 6, 1967.

Coudert Brothers, New York City, for plaintiff; William Rand, New York City, of counsel.

Norman Rosen, Brooklyn, N. Y., for Sandor Goldstein.

Gottesman, Wolgel & Smith, New York City, for all defendants other than Export-Import Bank of Washington; Samuel Gottesman, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for defendant Export-Import Bank of Washington; Alan G. Blumberg, Asst. U. S. Atty., of counsel.

## OPINION

McLEAN, District Judge.

Briefly summarized, the complaint in this action alleges that defendants issued an "Export Credit Insurance Agreement" to Goldgoods International Corporation under which defendants, in substance, insured Goldgoods against loss resulting from any failure of a buyer to pay for merchandise sold to him by Goldgoods. Goldgoods shipped various products to five different buyers in Argentina. The buyers failed to pay. Goldgoods, for a valuable consideration and with defendant's consent, assigned to plaintiff, a factoring organization, Goldgoods' claim against defendants under the insurance agreement. Defendants have refused to perform that agreement.

In addition to denials, defendants have alleged in their answer a number of affirmative defenses to this claim, one of which is that Goldgoods' claims are fraudulent and that in fact Goldgoods did not make any genuine sales to the buyers in question.

Defendants now move for summary judgment. This motion is not based upon any of the issues raised by the pleadings, which bristle with questions of fact. It is based upon the behavior of Sandor Goldstein, president and principal stockholder of Goldgoods, at the taking of his deposition in July and August 1966, a year and a half after this action was begun, pursuant to notice served by defendants in accordance with the Rules of Civil Procedure. On his examination Goldstein repeatedly claimed his Fifth Amendment privilege and refused to answer questions about the transactions on the ground that his answers might incriminate him.

Defendants claim that because of Goldstein's refusal to answer, plaintiff's action must be dismissed. They base this claim upon a provision of the insurance agreement which states:

"The insured shall at the request of the Insurers supply the Insurers with any information in the possession of the insured or take any reasonable steps to obtain for the Insurers any information or the sight of any documents in the possession of any third party relating to or connected with this insurance or any transaction between the insured and any insured buyer."

Plaintiff, as Goldgoods' assignee, surely is in no worse position than its assignor would be in if the assignor were the plaintiff here. Even if Goldgoods were suing, this motion would have to be denied, under the majority rule, because this policy provision cannot be breached after the insurers have denied liability and after suit on the insurance contract has been begun.

Defendants rely on Lomartira v. American Automobile Insurance Company, 371 F.2d 550 (2d Cir. 1967). The Court of Appeals there held that an action by an insured on a fire insurance policy was properly dismissed because of perjury committed by the insured in the course of testifying at the trial. The policy provided that it would be void "in case of any fraud or false swearing by the insured * `* *.*" The law governing the Lomartira case was the law of Connecticut. The Court of Appeals said that great weight must be given in a diversity case to the district judge's views on state law, and that the district judge was not clearly wrong in holding that under Connecticut law it is possible to breach an insurance provision after the action is brought. The court noted that the contrary rule is followed by "[t]he majority of courts that have ruled on the point." (371 F.2d at 553).

New York follows the majority rule. It has been held in New York that after an insurance company has denied liability on the policy, the insured need no longer comply with a provision which requires him to submit to an examination with regard to the loss.

"A repudiation of liability by an insurance company excuses the insured from further performance on his part of the conditions of the policies." Beckley v. Otsego County Farmers

Coop. Fire Insurance Company, 3 A.D. 2d 190, 194, 159 N.Y.S.2d 270, 274 (3rd Dept. 1957).

■ The New York Courts have applied this principle in analogous situations involving other policy requirements. See Vanguard Insurance Company v. Polchlopek, 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966); Neal, Clark & Neal Co. v. Liverpool & London & Globe Insurance Company Ltd., 178 App.Div. 730, 165 N.Y.S. 204 (4th Dept. 1917); Lloyd v. North British & Mercantile Insurance Company, 174 App. Div. 371, 161 N.Y.S. 271 (1st Dept. 1916).

■ If state law applies to this case, New York would seem to be the appropriate state. The policy was issued there, the insured is located there, and defendant's agent "with respect to all matters pertaining to this insurance" makes its office there. If it be thought that because Export-Import Bank of Washington, an agency of the United States, is a party to the contract, federal law should apply, the result is the same. There being no federal cases in point, as far as anyone has been able to discover, this court can properly apply the majority rule of the state cases which coincides with the rule in New York.

It is manifest that in the present case the defendant insurers denied liability long before Goldstein refused to answer the questions on his deposition. The insured's obligation under the policy to furnish information to assist the insurers no longer existed once the insurers had denied liability and the action had been begun against them. Consequently, defendants' motion for summary judgment is denied.

Defendants have also moved in the alternative for an order "directing Sandor Goldstein to testify at deposition * * * and providing that, if he fails to do so, the complaint herein shall be dismissed pursuant to Rule 37(b)." Notice of this motion was given to an attorney for Goldstein. He did not appear.

■ This court cannot enter a blanket order "directing Goldstein to testify."

For all that appears he may have valid grounds for invoking his constitutional privilege. The court will not undertake to rule on that question in the abstract and in Goldstein's absence. The validity of Goldstein's claim of privilege can be properly determined only by considering each separate refusal to answer. Defendants have not attempted to proceed in that fashion on this motion.

Moreover, defendants do not appear to be concerned with testing out the validity of Goldstein's claim of privilege or with laying a foundation for a contempt proceeding against him. What they want is a dismissal of this action because Goldstein has already refused to answer questions and presumably will do so again. If Goldstein or his corporation were the party plaintiff here, defendants might be entitled to this relief under Rule 37(b). Clearly they would be if the claim of privilege were unjustified and if Goldstein had no valid reason for refusing to answer. Interstate Cigar Company v. Consolidated Cigar Company, 317 F.2d 744 (2d Cir. 1963); United States v. 3963 Bottles, More or Less, etc., 265 F.2d 332 (7th Cir. 1959). cert. denied, 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959).

There may be more doubt about it if Goldstein properly claimed his privilege. See Independent Productions Corporation v. Loew's Incorporated, 22 F.R.D. 266 (S.D.N.Y.1958); Independent Productions Corporation v. Loew's Incorporated, 30 F.R.D. 377 (S.D.N.Y.1962).

I need not decide what the rights of Goldstein or Goldgoods would be in that situation. Here the assignee is the party plaintiff, not Goldstein nor Goldgoods. Plaintiff claims to be a bona fide purchaser of Goldgoods' claim. Plaintiff has no control over Goldgoods or Goldstein. It cannot require Goldstein to answer questions. Defendants do not contend otherwise. To dismiss plaintiff's action would penalize it for something which it did not do and which it was powerless to prevent. Defendants cite no authority to justify such a dismissal. In my opinion it would be unjust.

Defendants apparently have some evidence to support their defense of fraud. It is by no means certain that they will be unable to prove it without any admission from Goldstein. Even though to do so may put defendants to additional trouble and expense, this seems to me to be the fairer course under all the circumstances. Defendants' alternative motion is also denied.

So ordered.